**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 15 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

GERALD B. ELLIS; WILLIAM H.
NOBLE; MICHAEL ELLIS;
ROBERT LUELLEN, as Trustees of
Oklahoma Operating Engineers
Welfare Plan; OKLAHOMA
OPERATING ENGINEERS
WELFARE PLAN; LOCAL 627
INTERNATIONAL UNION OF
OPERATING ENGINEERS
APPRENTICESHIP & TRAINING,
DISTRICT 2 JOINT
APPRENTICESHIP & TRAINING
COMMITTEE; INTERNATIONAL
UNION OF OPERATING
ENGINEERS CENTRAL PENSION
FUND, PARTICIPATING
EMPLOYERS; LOCAL
627 INTERNATIONAL UNION OF
OPERATING ENGINEERS,

          Plaintiffs-Appellees,

v.

ALL STEEL CONSTRUCTION
INC., an Oklahoma corporation,

          Defendant-Appellant.

No. 03-6130

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CV-37-HE)**

Submitted on the briefs:

John A. Claro of Claro and Claro, Oklahoma City, Oklahoma, and Charles W. Ellis of Charles W. Ellis, PLLC, Oklahoma City, Oklahoma, for Defendant-Appellant.

Kelly F. Monaghan of Holloway & Monaghan, Tulsa, Oklahoma, for Plaintiffs-Appellees.

Before **EBEL**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

**EBEL**, Circuit Judge.

The plaintiff employee benefit plans obtained a judgment against Interstate Builders, Inc. for delinquent plan contributions under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, and § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. When collection efforts failed, plaintiffs filed this action to enforce the judgment against defendant All Steel Construction Inc. as the alter-ego successor of Interstate. Following a trial to the bench, the district court found that All Steel was Interstate's alter ego and thus liable for the unpaid judgment. All Steel appealed. We noted a potential deficiency in subject matter jurisdiction and had the parties brief the issue. We now hold that this judgment-enforcement action required its own jurisdictional basis independent of the federal character of the underlying judgment. Because

2

no such jurisdictional basis appears, we vacate the district court's judgment and remand with directions to dismiss the action. [1]

## Limits of Judgment-Enforcement Jurisdiction
### (*Sandlin* and *Peacock*)

In *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212 (10 th Cir. 1992), this court relied on *H.C. Cook Co. v. Beecher*, 217 U.S. 497 (1910), to hold that "when postjudgment proceedings seek to hold nonparties liable for a judgment on a theory that requires proof on facts and theories significantly different from those underlying the judgment, an independent basis for federal jurisdiction must exist." *Sandlin*, 972 F.2d at 1217. We then applied that principle to deny the existence of federal jurisdiction over various judgment-recovery efforts including the assertion of an alter-ego claim. *Id.* at 1217-18.

Shortly thereafter, the Supreme Court reaffirmed *H.C. Cook Co.* in an ERISA case, holding that a plaintiff who had obtained a judgment against a corporate employer could not enforce the judgment in a second suit asserting a veil-piercing theory against a shareholder without an independent basis for federal subject matter jurisdiction. *Peacock v. Thomas*, 516 U.S. 349, 357-60 (1996). The circuits had followed conflicting approaches to the question of jurisdiction in

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

judgment-enforcement actions, and the Court specifically cited *Sandlin* as an example of the approach it upheld. *Peacock*, 516 U.S. at 352 n.2. *See generally Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R.*, 144 F.3d 7, 10-11 (1st Cir. 1998) (discussing *Peacock* and *Sandlin* in connection with subject matter jurisdiction over alter-ego claim asserted in judgment-enforcement action).

Courts have recognized a number of analytical distinctions that clarify and delimit *Peacock*'s reach. If an alter-ego claim is asserted in conjunction with the underlying federal cause of action, the latter may provide the basis for ancillary jurisdiction over the alter-ego claim, obviating *Peacock* concerns; it is only when an alter-ego claim is asserted in a separate judgment-enforcement proceeding that *Peacock* requires an independent basis for federal jurisdiction.[2] *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037

---

[2] That is not to say that whenever a federal cause of action is asserted against one defendant it is always permissible to extend the resultant federal jurisdiction to other defendants through alter-ego or veil-piercing claims. The conditions for ancillary jurisdiction, now "supplemental jurisdiction" under 28 U.S.C. § 1367(a), must be met. But, without commenting on the result in any particular case, we note that it seems to be commonplace for federal courts to exercise jurisdiction over alter-ego or veil-piercing claims against additional defendants in conjunction with federal causes of action against primary defendants – often without hint of any jurisdictional issue. *See, e.g.*, *Trustees of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 191 & n.3 (3d Cir. 2003) (ERISA); *Worth v. Tyer,* 276 F.3d 249, 259-60 (7th Cir. 2001) (Title VII); *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999) (LMRA); *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 305, 308 (1st Cir. 1998) (ERISA and LMRA).

4

(7th Cir. 2000) (citing cases limiting *Peacock* to successive litigation); *Ortolf v. Silver Bar Mines, Inc.*, 111 F.3d 85, 87 (9th Cir. 1997). *Peacock* also is not implicated in actions to reach and collect assets of the judgment debtor held by a third party; it is only when the plaintiff seeks to hold the third party personally liable on the judgment that an independent jurisdictional basis is required. *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) (citing cases holding *Peacock* inapplicable to cases involving fraudulent conveyances). And, of course, in any judgment-enforcement action otherwise governed by *Peacock* there may in fact be an independent basis for federal jurisdiction. *See, e.g., C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 133 (4th Cir. 2002) (relying on diversity as independent jurisdictional basis for purposes of *Peacock*).

Plaintiffs do not, however, invoke any of these clear-cut and circumscribed points here. Instead, they urge us to follow a categorical exception to *Peacock* adopted by the Seventh Circuit in the *Elite Erectors* case that, in our view, is both generally ill-conceived and specifically inconsistent with this court's position in *Sandlin*.

This categorical exception derives from a narrower and more nuanced analysis set out in *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282 (7th Cir. 1996). *Central States* drew a distinction between claims that posit an alter ego's direct concurrent liability for

5

an ERISA violation (where the defendant, often a parent corporation, exercised "common control" over fund obligations at the time of the violation, so that it is held liable for *its own* "part in the initial ERISA violation") and claims that posit a retroactive or vicarious liability (where the defendant is traced to or associated with an employer in such a way that it is held to account for *the employer's* violation). *See id.* at 1286. The former reflects "a specific claim for relief under ERISA" asserted directly against the alter ego, which does not implicate *Peacock* concerns; while the latter reflects "an attempt to use ancillary jurisdiction 'to impose an obligation to pay an existing federal debt on a person not already liable for that judgment,'" which is precisely what *Peacock* holds must have its own jurisdictional basis independent of the federal character of the underlying ERISA judgment. *Id.* (quoting *Peacock*, 516 U.S. at 357).

The *Central States* analysis is consistent with *Peacock*, which as the Seventh Circuit noted involved a veil-piercing claim falling squarely on the vicarious side of its direct-versus-vicarious liability distinction. *Id.* It is also reconcilable with our *Sandlin* decision. *Sandlin'*s rejection of alter ego-based jurisdiction was tempered by the qualification that we were *not* "attempting to decide all future cases, when the alter-ego contentions may be more intertwined with the merits of an underlying [federal] claim." 972 F.2d at 1218. That qualification could easily be read to encompass the direct liability situation

6

discussed in *Central States*, where the alter-ego allegations inherently link the defendant to the underlying ERISA violation.[3]

Plaintiffs urge us to go much further than that, however. They would have us follow the Seventh Circuit's later expansion of *Central States* in the *Elite Erectors* case, which glossed over *Central States*' functional distinction between direct liability based on common control and generic vicarious liability, bluntly presumed that all alter-ego claims involve direct liability, and categorically limited *Peacock* to veil-piercing claims. *Elite Erectors, Inc.*, 212 F.3d at 1038. This extends *Central States* well beyond its rationale: if all alter-ego claims involve direct liability, even when they assert only that a successor must answer for the *predecessor's* past violations, then the distinctive feature of direct liability underpinning *Central States*' holding – that it turns on the alter ego's direct participation in the underlying violation – has been lost.

More concretely, the move from *Central States* to *Elite Erectors* put the Seventh Circuit squarely at odds with this circuit's holding in *Sandlin*. It is also inconsistent with the application of *Peacock* in a number of other circuits, which

---

[3] Indeed, to read *Sandlin's* "intertwining" reference in any other way, i.e., to suggest that judgment-enforcement jurisdiction could be based on factual overlap that did not also demonstrate the alter ego's direct participation in the underlying violation, would appear to be precluded now by *Peacock*, which made it clear that mere factual interdependence per se, even of a degree sufficient for traditional ancillary jurisdiction, "will not support federal jurisdiction over a subsequent [judgment-enforcement] lawsuit." *Peacock*, 516 U.S. at 355.

7

have addressed the jurisdictional viability of judgment-enforcement efforts based on alter-ego claims without any suggestion that they should be treated differently than veil-piercing claims. *See, e.g.*, *C.F. Trust, Inc.*, 306 F.3d at 133; *Epperson*, 242 F.3d at 106; *Futura Dev. of P.R., Inc.*, 144 F.3d at 10-12. Indeed, *Elite Erectors* appears to conflict with *Peacock* itself, insofar as the Supreme Court indicated that its holding, though specifically addressed to a veil-piercing claim, was broad enough to address the conflicting practices of several circuits, including ours in *Sandlin*, that had involved *alter-ego* claims. *See Peacock*, 516 U.S. at 352 n.2 (citing, as examples of circuit conflict Court was resolving, *Sandlin*, which had rejected jurisdiction over alter-ego claim, and *Blackburn Truck Lines, Inc. v. Francis*, 723 F.2d 730, 731-32 (9th Cir. 1984), which had affirmed jurisdiction over alter-ego claim); *see also Futura Dev. of P. R., Inc.*, 144 F.3d at 11 (noting "*Peacock's* discussion of other relevant circuit and Supreme Court case law confirms that its holding is as broad as dictated by its logic").

In sum, the jurisdictional principles set out in *Sandlin* and confirmed in *Peacock* govern here. No separate federal jurisdictional basis is needed when ERISA liability is asserted *directly* against a second entity based upon that second entity's direct role in the ERISA violation. This principle applies regardless of whether ERISA liability is asserted upon the basis of an alter-ego or veil-piercing

8

theory.  On the other hand, if ERISA liability is asserted derivatively against a second entity that did not directly participate in the ERISA violation – as for example, where successor liability is asserted – then a separate basis for federal jurisdiction must be established.  In short, the determinative factor is not whether ERISA liability is asserted against the second company based upon an alter-ego or veil-piercing theory; rather, the determinative factor is whether ERISA liability is asserted against the second company directly based on the actions of the second company or whether liability is asserted only derivatively or vicariously against the second entity based solely upon the relationship between the second entity and the initial ERISA employer.

### Application of *Sandlin /Peacock* Limits

Plaintiffs' complaint recites that they had recovered a judgment against Interstate and then alleges that, by virtue of All Steel's recruitment of employees and use of facilities, equipment, and business operations all traceable to Interstate, "All Steel is the successor-in-interest and/or alter ego of Interstate and is, therefore, liable to Plaintiffs for the amounts unpaid under the Judgment." App. 3-4.  There are no allegations that All Steel ever exercised any control over Interstate's business, much less that All Steel so dominated Interstate's operations during the time the ERISA obligation here arose that All Steel was directly liable for this ERISA obligation.  (Even if plaintiffs had alleged such a theory at the

9

outset, the facts regarding All Steel's involvement proven at trial, which relate largely to the period after Interstate had ceased doing business, would clearly not have supported a direct ERISA liability against All Steel). In short, the case was pled and prosecuted as a garden-variety judgment-enforcement action based on a retroactive alter-ego claim. As such, it clearly falls within the scope of *Sandlin* and *Peacock* and requires its own basis for federal jurisdictional separate from the underlying ERISA judgment against Interstate, absent which it should have been dismissed. [4]

Plaintiffs insist that federal jurisdiction over this action is preserved by the qualification in *Sandlin* regarding judgment-enforcement cases where "the alter ego contentions [are] more intertwined with the merits of an underlying claim." *Sandlin*, 972 F.2d at 1218. But plaintiffs do not point to any alter-ego contentions that show All Steel's direct entanglement in the pension fund liability reflected in the underlying federal judgment, which is the focus of the *Sandlin* qualification. Instead, they seize on a reference we made to merits/jurisdictional "intertwining" in a different situation involving an entirely distinct jurisdictional question and attempt to force it into the present context in such a way as to make *Sandlin's*

---

[4] Throughout their supplemental brief, plaintiffs indiscriminately rely on cases in which ancillary alter-ego claims were jointly asserted with substantive federal claims. It should be clear from our discussion in footnote 2 above that these cases are inapposite to the judgment-enforcement question we address and resolve here.

qualification swallow *Sandlin's* express holding. This argument is meritless, but it requires some effort to see through the wordplay and expose the fallacy.

The intertwining reference comes from *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976 (10 th Cir. 2002). In *Trainor*, the district court had dismissed a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111-17, because the defendant did not have fifteen employees. In considering whether the dispute over employee numbers fell under Fed. R. Civ. P. 12(b)(1) (dismissal for lack of subject matter jurisdiction) or Fed. R. Civ. P. 56 (summary judgment on merits), we held that the district court had properly followed Rule 56 procedure under the principle that "[w]hen subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claims and the merits are considered to be intertwined." *Trainor*, 318 F.3d at 978 (quotation omitted). Without elaboration, plaintiffs insist that the quoted passage shows why their alter-ego claim against All Steel is necessarily intertwined with the ERISA judgment against Interstate for purposes of *Sandlin*.

While the logical jump here is left vague, plaintiffs evidently equate the determination whether the defendant in *Trainor* had fifteen employees with the determination whether All Steel is Interstate's alter ego, and then conclude that the latter must be intertwined with the merits of the ERISA claim for purposes of *Sandlin*. Once the tacit line of reasoning is fleshed out, the flaw in the argument

11

becomes clear and it only highlights the deficiency in plaintiffs' position. The reason the jurisdiction and merits issues were intertwined in *Trainor* was because the fifteen-employee requirement (held by some courts to be jurisdictional) *was an element of the ADA cause of action*. But alter-ego status is not an element of an ERISA cause of action. Quite the contrary. It has been invoked here to hold All Steel responsible for the ERISA judgment against Interstate on a basis that, in *Sandlin's* terms, "requires proof on facts and theories *significantly different from those underlying the judgment*." *Sandlin*, 972 F.2d at 1217 (emphasis added).

To ignore the "significantly different" nature of a vicarious alter-ego claim vis-a-vis the direct cause of action giving rise to the underlying federal judgment – indeed, going so far as to say that alter-ego status constitutes an element of the underlying cause of action – would render *Sandlin* and *Peacock* meaningless here. There would be no such thing as a judgment-enforcement action based on alter-ego allegations, just many "direct" ERISA claims asserted against alter egos. [5]

---

[5] For sake of simplicity, we have generally referred to plaintiffs' alter-ego claim in connection with ERISA. Plaintiffs also invoked the LMRA both in their underlying action against Interstate and here, but the reference to the LMRA does not add to or alter the analysis. As the general terms of *Peacock's* holding reflect, *see* 516 U.S. at 351 (rejecting judgment-enforcement ancillary jurisdiction not just for ERISA-derived claims but for *any* "new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment"), and *Sandlin* (an ADEA case) itself illustrates,

(continued...)

12

We have not overlooked *Peacock's* open-ended caveat that "extraordinary circumstances" (thus far unspecified) might "justify ancillary jurisdiction over a subsequent [judgment-enforcement] suit like this." 516 U.S. at 359. Certainly, ERISA protects important interests. *See generally RTC v. Fin. Insts. Ret. Fund*, 71 F.3d 1553, 1555 n.2, 1556 (10th Cir. 1995). And it is true that, assuming the accuracy of plaintiffs' allegations, the employee benefit plans here have lost a significant source of funding for ERISA obligations owed by a defaulting employer. But to hold that this in itself suffices to create an "extraordinary circumstance" under *Peacock* would be to hold, in effect, that ERISA interests are so legally unique that they intrinsically authorize judgment-enforcement actions. That is something *Peacock* – an ERISA case itself – and its progeny clearly deny. Further, although not the route chosen by our plaintiffs, we note that other ERISA plaintiffs may have a straightforward means to avoid the jurisdictional problem identified in *Peacock* and *Sandlin*, provided the facts warrant it: they may join the alter-ego claim against the second company in the original ERISA suit against the defaulting employer. [6] Finally, we note that the operative deficiency here is only

---

[5](...continued)
there is nothing unique about ERISA in connection with the jurisdictional issue here. In short, the LMRA reference simply re-presents the same issue, turning on the same principles we have considered. *See generally Local 159, 342, 343 & 444*, 185 F.3d at 985.

[6]    Use of this means in any particular case would depend on justifying the
(continued...)

13

one of *federal* jurisdiction; nothing we have said would preclude the prosecution of an alter-ego claim in state court.

The judgment entered by the district court is VACATED and the cause is REMANDED with directions to dismiss for lack of subject matter jurisdiction.

---

[6](...continued)
exercise of ancillary or supplemental jurisdiction, as discussed in footnote 2 above.