**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DEBRA A. SHAW, sued as United
States ex rel.,

      Plaintiff-Appellant -
      Cross-Appellee,

v.

AAA ENGINEERING & DRAFTING
INC., a Utah Corporation,

      Defendant-Appellee -
      Cross-Appellant,

and

WILBUR L. BRAKHAGE,
Supervisor; JANICE KEELIN,

      Defendants-Appellees.

Nos. 03-6252 & 03-6286
(D.C. No. 95-CV-950-M
and No. 95-CV-951-M)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Judge, **HENRY** , and **O'BRIEN** , Circuit Judges.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

This appeal involves post-judgment collection activities that have been pursued by plaintiff-appellant Debra A. Shaw to recover attorneys' fees and costs that have been incurred in seeking to enforce a substantive judgment and related judgments awarding costs and attorneys' fees under the *qui tam* and wrongful termination provisions of the False Claims Act (FCA). *See* 31 U.S.C. § 3730(d)(2) and (h). The background facts pertaining to the underlying FCA claims and judgments are set forth in our prior decisions in *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519 (10th Cir. 2000) (affirming entry of *qui tam* and wrongful termination judgment in favor of Shaw) and *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538 (10th Cir. 2000) (affirming entry of initial amended judgment awarding costs and attorneys' fees to Shaw and holding that "both [the *qui tam* and the wrongful termination] FCA attorney fee provisions allow the award of attorney's fees for time spent in post-judgment collection activities").

As set forth in Shaw's notice of appeal, *see* Aplt. App., Vol. 4 at 1505-07, Shaw is appealing the order and the related judgment that the district court

entered on September 10, 2003 regarding her fourth application for costs and attorneys' fees. *See* R., Docs. 439, 440. Shaw is also appealing the following orders that were entered by the district court on August 19 and 20, 2003: (1) the order denying Shaw's motion to join persons needed for just adjudication and to amend judgments, *id.*, Doc. 424; (2) the order denying Shaw's application for appointment of receiver and preliminary injunction, *id.*, Doc. 421; (3) the order denying Shaw's motion for expedited injunctive relief and expedited hearing, *id.*, Doc. 420; (4) the order denying Shaw's motion for sanctions for contempt of court and motion to strike, *id.*, Doc. 422; (5) the order overruling Shaw's objection to the magistrate judge's order regarding her objection to the entry of appearance filed by William Bennett, *id.*, Doc. 419; (6) the order denying Shaw's motion for leave to file brief in reply to defendant's response briefs, *id.*, Doc. 427; and (7) the order affirming the magistrate judge's order granting the surety's motion to quash Shaw's demand for production of attorney records, *id.*, Doc. 430.

In addition, defendant-appellee AAA Engineering & Drafting, Inc. (AAA) is cross-appealing the portion of the order entered by the district court on August 20, 2003 which struck AAA's motion to quash Shaw's demand for production of attorney records. *Id.* Our jurisdiction is based on 28 U.S.C.

-3-

§ 1291. We affirm the orders and the judgment that Shaw is appealing, and we dismiss AAA's cross-appeal for lack of jurisdiction due to the untimely filing of its notice of appeal.

### A. Shaw's Motion to Join Persons Needed for Just Adjudication and to Amend Judgments.

Shaw filed her *qui tam* and wrongful termination claims in separate district court cases, but the district court consolidated the cases for trial. At the conclusion of the trial on Shaw's FCA claims, a judgment was entered in favor of Shaw and against AAA and the two individual defendants, Wilbur L. Brakhage and Janice Keelin, on Shaw's substantive claims. *See* Aplt. App., Vol. 1 at 276-78. Following the above-referenced appeals to this court, the district court entered an amended substantive judgment against AAA, Brakhage, and Keelin. *Id.* at 311-12. The amended judgment has apparently been satisfied in full, and it is not at issue in this appeal.

The FCA's *qui tam* and wrongful termination provisions provide for awards of costs and reasonable attorneys' fees to a successful plaintiff. *See* 31 U.S.C. § 3730(d)(2) and (h). In addition, as noted above, this court held in a prior appeal in this case that "both FCA attorney fee provisions allow the award of attorney's fees for time spent in post-judgment collection activities." *Shaw*, 213 F.3d at 545. In accordance with this statutory and case law authority, the district court has entered several separate judgments awarding costs and attorneys' fees to

-4-

Shaw, and each of the judgments have been entered against AAA, Brakhage, and Keelin. *See* Aplt. App., Vol. 1 at 285-88, 289-94, 306-07; Vol. 3 at 735; Vol. 4 at 1504.

In her motion to join persons and to amend judgments, Shaw sought to expand the scope of the latter judgments by imposing personal liability for the judgments on a number of additional individuals associated with AAA (the additional individuals). [1] As a procedural matter, Shaw based her motion on Rules 19(a) and 60(a) and (b) of the Federal Rules of Civil Procedure. *See* Aplt. App., Vol. 3 at 1014, 1027-28, 1031. As a matter of substantive law, Shaw based her motion on: (1) Okla. Stat. tit. 68, § 1212(c); (2) Oklahoma and Tenth Circuit decisions applying corporate veil-piercing principles; and (3) the inherent power of the federal courts to prevent fraud on the court. *Id.* at 1016-17, 1028-30, 1032-36.

We conclude that Shaw's motion was procedurally flawed. To begin with, Rule 60(a) is clearly inapplicable, as it applies only to efforts to correct "[c]lerical mistakes in judgments." Fed. R. Civ. P. 60(a). Likewise, Rule 60(b) does not provide a mechanism to amend a judgment in order to join additional

---

[1] Specifically, Shaw requested that the district court "enter an order joining persons needed for just adjudication as defendants and amending all judgments taken against suspended 'AAA' to include individual persons, including but not limited to officers, directors, shareholders, trustees/attorneys, and any other person, entity or firm that should be joined." Aplt. App., Vol. 3 at 1014.

parties. Instead, under certain specified circumstances, Rule 60(b) allows a district court to " *relieve* a party . . . from a final judgment." Fed. R. Civ. P. 60(b) (emphasis added). Rule 19 is also inapplicable, because, while it provides for the "Joinder of Persons Needed for Just Adjudication," Fed. R. Civ. P. 19, it does not provide a joinder mechanism for plaintiffs. [2] *See Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 669 (6th Cir. 2004) ("Rule 19 is the tool of the defendant, as the plaintiff has the power to choose which parties it wishes to sue and generally has ample freedom to amend its complaint to add a party."); *see also* Fed. R. Civ. P. 12(b)(7)(referring to the "defense" of "failure to join a party under Rule 19").

This does not mean that Shaw may not seek leave to amend a judgment to add additional parties, however, as Fed. R. Civ. P. 21 expressly provides that "[p]arties may be dropped or added by order of the court on motion of any party . . . *at any stage of the action* ." (emphasis added). Accordingly, we will treat Shaw's motion to join additional parties and to amend judgments as a joinder motion under Rule 21, and we review the district court's order denying the motion for an abuse of discretion. *See K-B Trucking Co. v. Riss Int'l Corp.* , 763 F.2d 1148, 1153 (10th Cir. 1985) ("The grant or denial of a motion to bring in or drop a party lies in the discretion of the judge. . . . The trial court's exercise of

---

[2] Of course, "Rule 19 could . . . be used by the plaintiff when the defendant files a counterclaim and raises an issue that the plaintiff then claims impacts an absentee [party] who should be joined." *Glancy*, 373 F.3d at 669 n.9.

discretion will not be disturbed on appeal unless an abuse [of discretion] is shown.") (quoting 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1688, at 342 (1972)).

As noted above, in her motion to join additional parties and to amend judgments, Shaw relied on Okla. Stat. tit. 68, § 1212(c), as one of the grounds for the motion, arguing: (1) that AAA's corporate status was suspended on January 21, 1998 due to its failure to pay state franchise taxes; and (2) that, under § 1212(c), the individuals identified in her motion were personally liable for all of the judgments that the district court had entered awarding costs and attorneys' fees to Shaw, because each of the judgments had been entered after AAA's corporate status was suspended. [3] In its order denying Shaw's motion, the district court rejected Shaw's argument under § 1212(c), concluding that "although the Court has issued judgments [for costs and attorneys' fees] during the time AAA Engineering was suspended, all of the judgments relate back to the original [FCA *qui tam* and wrongful termination] judgment entered on June 27, 1997." Aplt. App., Vol. 4 at 1477. The district court also found that "there is no evidence that

---

[3] As construed by the Oklahoma Supreme Court, § 1212(c) provides that the officers and directors of a corporation are personally liable for all business debts incurred by the corporation with their knowledge, approval and consent during any time period that the corporation is suspended for failure to pay franchise taxes. *See Bethlehem Steel Corp. v. Giese*, 681 P.2d 769, 769-70 (Okla. 1984).

AAA Engineering's officers, directors, shareholders, or trustees/attorneys knew of, approved, and consented to the judgments entered," *id.*, as is required by § 1212(c).

The district court did not address Shaw's corporate veil-piercing claims or her fraud on the court theory. Both the parties and the district court have also overlooked the critical threshold issue of whether the district court had subject matter jurisdiction to join parties and extend the judgments to new individuals based on Shaw's theories of liability. [4] "Although neither party has challenged the district court's jurisdiction, insofar as subject matter jurisdiction is concerned, it has long been recognized that a federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding." *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270-71 (10th Cir. 1998) (quotation omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (holding that a federal court must always satisfy itself first that it does in fact have subject matter jurisdiction before proceeding in any case, and that there is no such thing as "hypothetical jurisdiction"); *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1309-10 (10th Cir. 1998)

---

[4] On May 6, 2005, we entered an order directing the parties to file supplemental briefs addressing the jurisdictional issues that are raised by Shaw's joinder motion and AAA's cross-appeal. Both sides subsequently filed supplemental briefs.

("*Steel* requires that a federal court satisfy itself of subject matter jurisdiction before proceeding to the merits of a claim–even when the question of the merits is the easier one"), *overruled on other grounds by Styskal v. Weld County Comm'rs*, 365 F.3d 855 (10th Cir. 2004). Further, "the burden of proving jurisdiction is on the party asserting it, and we review the district court's subject matter jurisdiction . . . de novo." *Narvaez*, 149 F.3d at 1271 (quotation omitted).

We recently summarized the jurisdictional issues presented by cases such as this one where a plaintiff is seeking to expand the scope of a federal judgment as follows:

> In *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212 (10th Cir. 1992), this court relied on *H.C. Cook Co. v. Beecher*, 217 U.S. 497 . . . (1910), to hold that "when postjudgment proceedings seek to hold nonparties liable for a judgment on a theory that requires proof on facts and theories significantly different from those underlying the judgment, an independent basis for federal jurisdiction must exist." *Sandlin*, 972 F.2d at 1217. We then applied that principle to deny the existence of federal jurisdiction over various judgment-recovery efforts including the assertion of an alter-ego claim. *Id.* at 1217-18.
>
> Shortly thereafter, the Supreme Court reaffirmed *H.C. Cook Co.* in an ERISA case, holding that a plaintiff who had obtained a judgment against a corporate employer could not enforce the judgment in a second suit asserting a veil-piercing theory against a shareholder without an independent basis for federal subject matter jurisdiction. *Peacock v. Thomas*, 516 U.S. 349, 357-60 . . . (1996). The circuits had followed conflicting approaches to the question of jurisdiction in judgment-enforcement actions, and the Court specifically cited *Sandlin* as an example of the approach it upheld. *Peacock*, 516 U.S. at 352 n. 2 . . . .

Courts have recognized a number of analytical distinctions that clarify and delimit *Peacock's* reach. If an alter-ego claim is asserted in conjunction with the underlying federal cause of action, the latter may provide the basis for [supplemental] jurisdiction [under 28 U.S.C. § 1967] over the alter-ego claim, obviating *Peacock* concerns; it is only when an alter-ego claim is asserted in a separate judgment-enforcement proceeding that *Peacock* requires an independent basis for federal jurisdiction. . . . *Peacock* also is not implicated in actions to reach and collect assets of the judgment debtor held by a third party; it is only when the plaintiff seeks to hold the third party personally liable on the judgment that an independent jurisdictional basis is required. . . . And, of course, in any judgment-enforcement action otherwise governed by *Peacock* there may in fact be an independent basis for federal jurisdiction. *See, e.g., C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 133 (4th Cir. 2002) (relying on diversity as independent jurisdictional basis for purposes of *Peacock*).

*Ellis v. All Steel Const. Co.*, 389 F.3d 1031, 1033-34 (10th Cir. 2004).

These enforcement proceedings derive from an FCA judgment, entered by virtue of federal question jurisdiction under 28 U.S.C. § 1331. Consequently, based on the Supreme Court's decision in *Peacock* and this court's decisions in *Sandlin* and *Ellis*, to establish subject matter jurisdiction in the district court over the claims asserted against the additional individuals, Shaw had three alternatives: (1) show that the claims allege direct liability or are directly entangled with the underlying FCA claims, *see Ellis*, 389 F.3d at 1034-36, such that the claims fell within the district court's original FCA federal question jurisdiction, *id.* at 1035 (stating in ERISA case that "[n]o separate federal jurisdictional basis is needed when ERISA liability is asserted *directly* against a second entity based upon that

-10-

second entity's direct role in the ERISA violation"); (2) show that complete diversity of citizenship existed between the original parties to this case and the additional individuals such that the district court had subject matter jurisdiction under 28 U.S.C. § 1332(a); or (3) show that, even if there was no independent basis for subject matter jurisdiction, the district court could exercise supplemental jurisdiction over the claims against the additional individuals under 28 U.S.C. § 1367(a).

Leaving aside for the moment Shaw's fraud on the court theory, which we will address separately below, it is clear that Shaw is relying on state and federal corporate veil-piercing rules, both statutory ( *i.e.*, Okla. Stat. tit. 68, § 1212(c)) and common law, as the mechanism to impose personal liability on the additional individuals for the judgments awarding costs and attorneys' fees. *See* Aplt. App., Vol. 3 at 1035-36. It is also clear that Shaw's claims against the additional individuals are based on conduct that allegedly occurred *after* the initial FCA judgment was entered in June 1997. Specifically, in her joinder motion, Shaw alleged that the additional individuals have engaged in various forms of post-judgment misconduct in order to defeat her judgment-collection efforts. *Id.* at 1021-25, 1033-34. We therefore have no difficulty concluding that Shaw is "seek[ing] to hold nonparties liable for [] judgment[s] on [] theor[ies] that require[] proof on facts and theories significantly different from those underlying

the [original FCA] judgment[s]." *Ellis*, 389 F.3d at 1033. As a result, "a separate basis for federal jurisdiction must be established." *Id.* at 1035. And, because Shaw is not asserting liability for the underlying FCA judgment "*directly* against [the additional individuals] based upon [their] direct role in the [FCA] violation[s]," *id.*, federal question jurisdiction cannot provide the separate basis. [5]

There is also no basis for diversity jurisdiction. The two individual defendants, Brakhage and Keelin, were citizens of Oklahoma at the time Shaw filed her initial FCA complaints. *See* Aplt. App., Vol. 1 at 92-93, ¶ 4; 109, ¶ 3; 120, ¶ 4; 135-36, ¶ 4. Because Shaw is also a citizen of Oklahoma, there was no complete diversity of citizenship as required under 28 U.S.C. § 1332(a). [6] *See*

---

[5] As noted above, in addition to Oklahoma law, Shaw is relying on federal common law to support her corporate veil-piercing claim. However, whether based on state or federal law, a veil-piercing claim "cannot independently support federal [question] jurisdiction." *Peacock*, 516 U.S. at 353-54. Instead, as explained by the Supreme Court in *Peacock*, "[p]iercing the corporate veil is not itself an independent [federal] cause of action, but rather is a means of imposing liability on an underlying cause of action." *Id.* at 354 (quotation omitted). As a result, "neither [the FCA's] jurisdictional provision, [31 U.S.C. § 3732], nor 28 U.S.C. § 1331 supplied the District Court with jurisdiction over [the veil-piercing claims]." *Id.* In addition, the two cases that Shaw relied on her joinder motion to support her federal common law veil-piercing claim are inapposite, as the United States (or an entity thereof) was the plaintiff in both cases, and there was thus an independent basis for federal question jurisdiction based on the United States' status as a plaintiff. *See* Aplt. App., Vol. 3 at 1035-36 (citing *United States v. Van Diviner*, 822 F.2d 960 (10th Cir. 1987) (breach of contract action) and *FDIC v. Oldenburg*, 34 F.3d 1529 (10th Cir. 1994) (action brought by FDIC to recover for losses caused by officers and directors of failed savings and loan)).

[6] In her initial complaint, Shaw alleged that defendant Keelin "reside[d] at (continued...)

-12-

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) ("When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal."); *see also Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam) (holding that a party's citizenship, *i.e.*, his domicile, must be determined as of the moment the plaintiff's complaint is filed, and events either before or after the filing of the complaint will not defeat citizenship).

We also conclude that it would have been an abuse of discretion for the district court to have exercised supplemental jurisdiction under 28 U.C.S. § 1367(a) over the state-law claims that Shaw has asserted against the additional individuals. As recognized by the Supreme Court in *Peacock*, Congress enacted § 1367 in order to "codif[y] much of the common-law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction.'" *Peacock*, 516 U.S. at 354 n.5. In particular, § 1367(a) codified the principle that "[t]he federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law

---

[6](...continued)
5304 Northwest 115, Oklahoma City, Oklahoma." Aplt. App., Vol. 1 at 92-93, ¶ 4. In her answer to the initial complaint, defendant Keelin stated that the Oklahoma address set forth in Shaw's complaint was "incorrectly alleged." *Id.* at 135-36, ¶ 4. Defendant Keelin did not dispute that she was in fact a resident of Oklahoma, however. Further, even if she was not a resident of Oklahoma, there was still no complete diversity of citizenship, because it is undisputed that defendant Brakhage was a resident of Oklahoma at the time Shaw filed her initial complaints.

claims that derive from a common nucleus of operative fact, such that the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises just one constitutional case." [7] *Gold*, 159 F.3d at 1310. Section 1367(c) also authorizes the district courts to decline supplemental jurisdiction in certain specified circumstances, however, and one of the circumstances is where "the [state] claim substantially predominates over the claim or claims over which the district court has jurisdiction." 28 U.S.C. § 1367(c)(2). "The exercise of supplemental jurisdiction is therefore discretionary," and "we review [a] district court's decision to decline supplemental jurisdiction for abuse of discretion only." *Gold*, 159 F.3d at 1310.

Although the Supreme Court in *Peacock* did not specifically apply § 1367, we nonetheless believe that *Peacock* provides the answer to the supplemental jurisdiction issue in this case. In *Peacock*, the plaintiff filed a lawsuit in federal court against an officer/shareholder of a corporation in an effort to collect a ERISA judgment that the plaintiff had previously obtained against the corporation in a separate federal case. *See Peacock*, 516 U.S. at 351-52. The district court ultimately entered judgment in favor of the plaintiff based on a corporate

---

[7]     Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

veil- piercing theory, and the Fourth Circuit affirmed on appeal, "holding that the District Court properly exercised ancillary jurisdiction over [the] suit." *Id.* at 352. On appeal to the Supreme Court, the Supreme Court reversed the Fourth Circuit, concluding that the district court could not exercise ancillary jurisdiction for two reasons. First, because *Peacock* involved a subsequent lawsuit that was filed after the original ERISA case had been concluded, the Court noted that there was no "primary lawsuit" that could provide an independent basis for federal jurisdiction. *Id.* at 355. As the court explained,

> The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction. Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit.

*Id.* (citations omitted).

Second, as an alternative basis for rejecting ancillary jurisdiction, the Court concluded that "[i]n any event, there is insufficient factual dependence between the claims raised in [plaintiff's] first and second suits to justify extension of ancillary jurisdiction." *Id.* The Court's reasoning with regards to the factual dependence issue was as follows:

> [Plaintiff's] factual allegations in this suit are independent from those asserted in the [prior] ERISA suit, which involved Peacock's

-15-

and Tru-Tech's status as plan fiduciaries and their alleged wrongdoing in the administration of the plan. The facts relevant to this complaint are limited to allegations that Peacock shielded Tru-Tech's assets from the ERISA judgment long after Tru-Tech's plan had been terminated. The claims in these cases have little or no factual or logical interdependence, and, under these circumstances, no greater efficiencies would be created by the exercise of federal jurisdiction over them.

*Id.* at 355-56.

This case differs from *Peacock* in that Shaw has asserted her claims against the additional individuals in her FCA case. Consequently, there is an existing "primary lawsuit" that could provide an independent basis for federal jurisdiction. Nonetheless, in light of the Supreme Court's alternative holding in *Peacock* with regards to the factual dependence issue, we believe the Court would have rejected ancillary jurisdiction in *Peacock* even if the veil-piercing claim had been asserted in the prior ERISA case. Because Congress intended to codify the doctrine of ancillary jurisdiction as part of "supplemental jurisdiction" in § 1367, *id.* at 355 n.5, we also believe that *Peacock* requires us to conclude that the district court would have abused its discretion if it had granted Shaw's joinder motion and exercised supplemental jurisdiction, as there is simply an "insufficient factual dependence between [plaintiff's state-law claims and the underlying FCA claims] to justify the extension of [supplemental] jurisdiction." *Id.* at 355. Accordingly, we conclude, as a matter of law, that the district court would have abused its discretion under § 1367 and Fed. R. Civ. P. 21 if it had granted Shaw's joinder

-16-

motion, and we therefore affirm the district court's denial of the motion. *Cf.*

*Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003) ("[W]ith respect to a

matter committed to the district court's discretion, we [can] invoke an alternative

basis to affirm [if] we can say as a matter of law that it would have been an abuse

of discretion for the court to rule otherwise").

Finally, as noted above, Shaw is also appealing the order and the related

judgment that the district court entered on September 10, 2003 regarding her

fourth application for costs and attorneys' fees. *See* R., Docs. 439, 440. Because

we have concluded that the district court acted properly in denying Shaw's joinder

motion, we also reject Shaw's claim that the district court erred by failing to enter

a judgment against the additional individuals for the amounts awarded to her in

response to her fourth application for costs and attorneys' fees. We therefore

affirm the order and judgment entered by the district court regarding Shaw's

fourth application for costs and attorneys' fees. Likewise, we affirm: (1) the

order entered by the district court on August 19, 2003 denying Shaw's application

for appointment of receiver and preliminary injunction, *id.*, Doc. 421; and (2) the

order entered by the district court on August 19, 2003 denying Shaw's motion for

expedited injunctive relief and expedited hearing, *id.*, Doc. 420. These matters

were also tied to Shaw's joinder motion, and our ruling with regards to the joinder

motion disposes of them as well.

## B. Fraud on the Court.

A federal district court has the "inherent power . . . to set aside its judgment if procured by fraud upon the court." *United States v. Buck*, 281 F.3d 1336, 1341 (10th Cir. 2002). We have emphasized, however, that fraud on the court occurs only "where the impartial functions of the court have been directly corrupted." *Id.* at 1342 (quotation omitted). Thus,

> [g]enerally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*Id.* (quotation omitted).

In her joinder motion, Shaw alleged that AAA and its counsel committed fraud on the district court by failing to disclose "AAA's loss of corporate status and protection." Aplt. App., Vol. 3 at 1032. According to Shaw, "AAA and its individual representatives, by their silence, continued to engage in the unconscionable scheme of purporting to hold corporate status with correlative corporate protections in proceedings before the [district court] commencing in 1998 and continuing through the present." *Id.* at 1033. Shaw further alleged that the additional individuals "intentionally duped the Court . . . by their unconscionable scheme calculated to interfere with the judicial system's ability to

adjudicate and to unfairly hamper [plaintiff's] collection and the final resolution of this case." *Id.* at 1033-34.

Having thoroughly reviewed the record in this case, we conclude, as a matter of law, that Shaw's allegations fall short of establishing the type of egregious misconduct that is necessary to establish fraud on the court. As a result, it would have been an abuse of discretion for the district court to grant Shaw any relief on her fraud on the court claim. *See Buck*, 281 F.3d at 1342-43 (noting that this court reviews district court rulings regarding fraud on the court claims under abuse-of-discretion standard).

## C. Other Orders.

As set forth above, Shaw is also appealing several other post-judgment orders that were entered by the district court. Because the orders resolved important questions that arose after a final judgment was entered, we conclude that appellate review is available to test the district court's rulings. *See In re Farmers' Loan & Trust Co.*, 129 U.S. 206, 213 (1889); *see also* Wright, Miller & Cooper, *Federal Practice and Procedure*: Jurisdiction 2d § 3916 at 351 (1992) (stating that "once the original trial proceedings have been completed, final judgment appeal should be available upon the conclusion of most post-judgment proceedings," and that a post-judgment "[a]ppeal should be available whenever

the trial court has finally disposed of the question, and there are no pending proceedings raising related questions").

We affirm each of the post-judgment orders that Shaw is appealing. First, AAA's surety, American Manufacturers Mutual Insurance Company (American), filed a motion to quash due to a post-judgment discovery dispute involving subpoenas that Shaw had served on co-counsel for AAA and American, and American sought to quash Shaw's request for detailed attorney billing statements. *See* Aplt. App., Vol. 3 at 988-89. The magistrate judge entered an order granting American's motion to quash, concluding: (1) that Shaw "ha[d] not clearly articulated what claim or issue would be addressed by the requested documents"; and (2) that Shaw "offer[ed] no explanation of how the production of detailed attorney billing statements . . . would lead to the discovery of admissible evidence." *Id.* at 991. On appeal to the district court, the district court affirmed the magistrate judge's order. *Id.*, Vol. 4 at 1480-81. We conclude that the district court did not abuse its discretion with regards to American's motion to quash.

Second, Shaw moved for sanctions for contempt of court and to strike a motion filed by AAA on the ground that AAA and its counsel had allegedly failed to comply with a prior order of the district court requiring the parties to serve a copy of all pleadings and motions on the United States. *Id.*, Vol. 3 at 993. Shaw also alleged that AAA and its counsel had failed to comply with the service

-20-

requirements under Fed. R. Civ. P. 5. *Id.* at 994. The magistrate judge entered an order recommending that the district court deny Shaw's motion, concluding that she "ha[d] not met the burden of showing entitlement to an award of damages for civil contempt or shown that other forms of requested relief are appropriate." *Id.* at 993-94. The district court adopted the magistrate judge's recommendation, and it denied Shaw's motion for sanctions for contempt of court and to strike. *Id.*, Vol. 4 at 1472. We conclude that the district court did not abuse its discretion in denying Shaw's motion.

Third, the magistrate judge entered an order denying Shaw's request that attorney William Bennett be disqualified from representing AAA, concluding that Shaw had failed to establish "good cause to disallow representation of AAA by Mr. Bennet." *Id.*, Vol. 3 at 987. On appeal to the district court, the court overruled Shaw's objection to the magistrate judge's order. *Id.*, Vol. 4 at 1468. We conclude that the district court did not abuse its discretion with regards to Mr. Bennett's entry of appearance.

Lastly, the district court entered an order denying Shaw's motion for leave to file a brief in reply to certain response briefs that had been filed by AAA. *Id.* at 1479. We see no abuse of discretion by the district court in denying Shaw's motion.

**D. AAA's Cross-Appeal.**

"A court of appeals acquires jurisdiction of an appeal only upon the filing of a timely notice of appeal; this requirement is mandatory and jurisdictional." *United States v. Torres*, 372 F.3d 1159, 1161 (10th Cir. 2004) (quotation omitted). Because the timeliness of AAA's cross-appeal is at issue, we "must determine, as a threshold matter, whether [AAA's] notice of appeal was timely." *Trotter v. Regents of the Univ. of N.M.*, 219 F.3d 1179, 1182 (10th Cir. 2000).

Shaw filed her notice of appeal on September 18, 2003. *See* Aplt. App., Vol. 4 at 1505. On October 17, 2003, AAA filed a notice of appeal "as to that portion of the [order entered by the district court on August 20, 2003] which vacate[d] the U.S. Magistrate Judge's order and [struck] [AAA's] motion to quash, or in the alternative to limit production." Aplee. App., Vol. 2 at 319.

According to Fed. R. App. P. 4(a)(3), "[i]f one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later." Here, AAA failed to file its notice of appeal within 14 days after the date when Shaw filed her notice of appeal. As a result, in order to be timely, AAA was required to file its notice of appeal within the time prescribed by Fed. R. App. P. 4(a).

According to Fed. R. App. P. 4(a)(1)(A), a party to a civil case must file a notice of appeal in the district court "within 30 days after the judgment or order appealed from is entered." However, "[w]hen the United States . . . is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(B).

AAA failed to file its notice of appeal within thirty days of the entry of the district court's August 20, 2003 order, but it filed its notice of appeal within sixty days of the entry of that order. Thus, we must determine whether the United States was a party to the consolidated district court cases (specifically, the *qui tam* case, D.C. No. 95-CV-950-M) such that AAA could rely on the sixty-day provision in Fed. R. App. P. 4(a)(1)(B). *See In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987) (holding that where the United States was a party to one case, the sixty-day rule applied to the other case if the cases were consolidated); *accord Perry Hollow Golf Club, Inc. v. Perry Hollow Mgmt. Co., (In re Perry Hollow Mgmt. Co.)*, 297 F.3d 34, 39 (1st Cir. 2002); *Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of America, Inc.*, 808 F.2d 133, 136 (D.C. Cir. 1987).

The Fifth Circuit has explained the issues that *qui tam* FCA cases raise in this context as follows:

> In a *qui tam* case in which the United States intervenes, the government is clearly a party and the sixty-day rule applies. The

difficulty arises when the government chooses not to intervene. When a False Claims Act suit is initiated by a private person--a *qui tam* plaintiff or relator--the action is brought "for the person and for the Government" and is "brought in the name of the Government." 31 U.S.C. § 3730(b)(1). The government has sixty days after receiving a complaint and evidentiary information from the relator to decide whether to intervene in the suit. *See id.* § 3730(b)(2)-(4).

If the government decides not to intervene, the citizen may conduct the action.

*United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 306 (5th Cir. 1999). In this case, the United States elected not to intervene in Shaw's *qui tam* case. *See* R., D.C. No. 95-CV-950-M, Doc. 17. We must therefore determine whether the United States was nonetheless a party to the case for purposes of Fed. R. App. P. 4(a)(1)(B).

In *United States ex rel. Petrofsky v. Van Cott, Bagley, Cornwall, McCarthy*, 588 F.2d 1327 (10th Cir. 1978), this court addressed the thirty-versus-sixty-day issue under a prior version of the FCA. Under the prior version of the FCA, "[t]he statute require[d] the government [to] join or withdraw from the suit within 60 days. If the United States join[ed], it control[led] the litigation; if it with[drew], the person bringing the action [could] proceed individually." *Id.* at 1328 (citing 31 U.S.C. § 232(C)). In *Petrofsky*, "the United States specifically declined to enter Petrofsky's suit and the action was [subsequently] dismissed by the [district court] . . . . Exactly 60 days later Petrofsky appealed that dismissal to this Court." *Id.* The issue in *Petrofsky* was thus whether "the United States . . .

-24-

[was] a party to [the] action, thereby extending to 60 days the 30-day time limit for filing appeals." *Id.* A panel of this court, with one judge dissenting, concluded that the thirty-day period applied:

> The statute gives the government the option to prosecute the case itself, or withdraw. Here the government withdrew. Petrofsky knew this, and so did the defendant. It was clear at that time the United States would not participate in the suit and that proceeding in its name was merely a statutory formality. While this Court recognizes the need for an open interpretation of Fed. R. App. P. 4(a) to assure innocent parties not be prejudiced by too strict a reading, the rule achieves no such purpose in this case. All parties were aware the government disclaimed any participation in the suit and there are no other circumstances which indicate a need for more than the usual 30 days to make the appeal. For these reasons, we hold the 60-day provision inapplicable and dismiss the appeal for failure to file within the 30-day requirement of Fed. R. App. P. 4(a).

*Id.* at 1329.

In cases arising under the current version of the FCA, other circuits have disagreed with the reasoning and result in *Petrofsky*, but it does not appear that the disagreement has resulted from any changes in the pertinent provisions of the FCA. For example, in *Russell*, the Fifth Circuit explained that it disagreed with this court's approach in *Petrofsky* primarily out of a concern that *qui tam* plaintiffs may be misled "into believing that the United States is a party." *Russell*, 193 F.3d at 308. The court therefore concluded that "Rule 4(a)(1) should be construed to reduce uncertainty in the already difficult conceptual terrain of *qui tam* suits," and the court "[held] that when the United States has declined to

intervene in a False Claims Act suit filed by a *qui tam* plaintiff, Rule 4(a)(1) provides the remaining parties sixty days . . . to file notices of appeal." *Id.*; *accord United States ex rel. Lu v. Ou*, 368 F.3d 773, 774-75 (7th Cir. 2004) (rejecting *Petrofsky*); *United States ex rel. Haycock v. Hughes Aircraft Co.*, 98 F.3d 1100, 1102 (9th Cir. 1996) (same).

We recognize that there are valid arguments in favor of applying the sixty-day rule in *qui tam* cases such as this one. *See Russell*, 193 F.3d at 308 (noting that "the government is ever present in *qui tam* suits in ways that promote confusion"). That said, we do not see a clear-cut basis for distinguishing *Petrofsky* and/or the prior version of the FCA that was at issue in *Petrofsky*. Accordingly, we conclude that we are bound by our prior decision in *Petrofsky*. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam) ("We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior appeals absent en banc reconsideration or a superseding contrary decision by the Supreme Court."); *see also Tootle v. USDB Commandant*, 390 F.3d 1280, 1283 (10th Cir. 2004) (stating that panels of this court are "bound to follow . . . the published decisions of this court").

**CONCLUSION**

We AFFIRM the following orders and judgments of the district court: Doc. Nos. 419, 420, 421, 422, 424, 427, 430, 439, 440. We DISMISS AAA's cross-appeal for lack of jurisdiction.

With regards to the appellate motions filed by the parties, we GRANT Shaw's motion for permission to file a supplemental appendix to the third brief on cross-appeal. In light of the disposition set forth herein, we DENY: (1) Shaw's request that the court take judicial notice of various matters; (2) AAA's motion to strike Shaw's request for the court to take judicial notice; (3) Shaw's motion to strike the second and fourth briefs on cross-appeal; (4) Shaw's motion to temporarily stay the determination of this appeal; and (5) Shaw's motion for a temporary order granting leave to file documents under seal. Finally, we DENY Shaw's motion to companion this appeal with Tenth Circuit Case No. 05-6181 and the other "unassigned" appeal referenced in her motion.

Entered for the Court

Terrence L. O'Brien
Circuit Judge