# United States Court of Appeals
## For the First Circuit

No. 09-2059

PENN-AMERICA INSURANCE COMPANY,

Plaintiff, Appellee,

v.

LEE LAVIGNE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Aaron K. Baltes, with whom Norman, Hanson & DeTroy, LLC was on brief, for appellant.
H. Peter Del Bianco, Jr., with whom Teresa M. Cloutier and Lambert Coffin Haenn were on brief, for appellee.

August 24, 2010

**LIPEZ, Circuit Judge**.  This diversity case involves the interpretation of the language in a commercial general liability insurance policy.  We must address two principal issues: (1) the applicability to the accident at issue of an endorsement to the insurance policy that purports to exclude "any and all claims arising from roofing," and, (2) if that exclusion does apply, whether the accident involves a claim "arising from roofing."  These issues were presented to the district court when the insurer filed a declaratory judgment action seeking a judgment that the insurance policy excluded liability coverage for the accident.  On summary judgment, the district court ruled for the insurer.  We affirm.

## I.

Except where noted, the following facts are undisputed.  In 2004, Michael Daigle was hired to put a new roof on a four-unit apartment building in Westbrook, Maine.  The building manager, Ellen Driscoll, also asked Daigle to make sure that the windows of the two dormers located above the building's roof line were sealed properly.  Along with his business associate, Charles Raybine, Daigle removed the existing roof of the building, re-roofed the structure and performed some work on the dormers above the roof line.  Daigle and his crew also fixed a window that they broke while working.

On May 2, 2004, appellant Lavigne, and his friend, Archie Perry, visited the job site. Perry, who was on his way to Home Depot, knew that Daigle was working on the roof of the building and stopped to inquire if Daigle needed any supplies from the store. In an effort to locate Daigle, Lavigne climbed up on the scaffolding that Daigle's crew used to access the roof. When a portion of the scaffolding snapped, Lavigne fell to the ground, breaking his neck and sustaining other serious injuries. At the time of the accident, Raybine was also on the scaffolding.[1]

Daigle, who conducted business as Mike's Carpentry, held a commercial general liability insurance policy issued by Penn-America. The policy, which was effective April 20, 2004 through April 20, 2005, provided coverage for injuries and property damage, subject to certain terms and conditions. One such condition was contained in a standard endorsement form ("Endorsement A") attached to the policy. Endorsement A, described in further detail below, contained the added phrase, "excluding any and all claims arising from roofing."

After the accident, Lavigne asserted a claim on Daigle's insurance; Penn-America denied coverage for the claim. On December 13, 2007, Penn-America filed this federal diversity action against Daigle and Lavigne in the United States District Court for the

---

[1] The parties dispute whether Raybine was preparing to re-roof the building or was in the process of fixing the crooked staging.

District of Maine,[2] seeking a declaratory judgment that Daigle's insurance policy excluded liability coverage for claims arising from roofing. After discovery, including the taking of depositions from Daigle, Lavigne, and Raybine, among others, Penn-America moved for summary judgment. The court granted the motion on July 7, 2009,[3] finding that Endorsement A excluded claims arising from roofing and that there was no genuine issue of material fact as to whether Lavigne's accident arose from roofing.[4] This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009). Summary judgment is properly granted if the record, viewed in the light most favorable to the nonmoving party, discloses no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. Ins. Co. v. Commerce Ins. Co., 597 F.3d 68, 70 (1st Cir. 2010). We review de novo the district

---

[2] Penn-America is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania. Daigle and Lavigne are both residents of Maine.

[3] The motion for summary judgment was referred to a magistrate judge who issued a report and recommendation which the district court adopted.

[4] The court entered a default judgment against Daigle, who did not appear to defend against Penn-America's claims. He is not a party to this appeal. Lavigne later asserted a claim against Daigle based on his fall from the scaffolding. That claim is not before us.

-4-

court's legal construction of the insurance policy. <u>Pease</u> v. <u>State Farm Mut. Auto. Ins. Co.</u>, 931 A.2d 1072, 1075 (Me. 2007).

## A. Insurance policy construction

It is undisputed that Maine law applies to the interpretation of the insurance contract between Penn-America and Daigle. In Maine, as in many jurisdictions, the "paramount principle in the construction of contracts is to give effect to the intention of the parties as gathered from the language of the agreement viewed in light of all the circumstances under which it was made." <u>Greenly</u> v. <u>Mariner Mgmt. Group, Inc.</u>, 192 F.3d 22, 26 (1st Cir. 1999) (quoting <u>Whit Shaw Assocs.</u> v. <u>Wardwell</u>, 494 A.2d 1385, 1387 (Me. 1985)).

If a contractual provision is ambiguous, or "'reasonably susceptible of different interpretations,'" <u>First Specialty Ins. Corp.</u> v. <u>Am. Home. Assurance Co.</u>, 558 F.3d 97, 100 (1st Cir. 2009) (quoting <u>Apgar</u> v. <u>Commercial Union Ins. Co.</u>, 683 A.2d 497, 498 (Me. 1996)), it must be construed liberally in favor of the insured and against the insurer. <u>Med. Mut. Ins. Co. of Me.</u> v. <u>Indian Harbor Ins. Co.</u>, 583 F.3d 57, 60 (1st Cir. 2009). Exclusionary language in a contract is not ambiguous, however, if "any ordinary person in the shoes of the insured" would understand that the policy does not cover his or her claims. <u>City of South Portland</u> v. <u>Maine Mun. Ass'n</u>, 953 A.2d 1128, 1130 (Me. 2008).

## B. Interpretation of Endorsement A

Endorsement A is a generic, one-page form that was used to customize the Penn-America insurance policy taken out by Daigle. The parties dispute whether Endorsement A effectively excludes from liability coverage "all claims arising from roofing."

In Daigle's contract, Endorsement A is personalized with the name of his business, his policy number and the effective date and time of the endorsement. The preprinted language at the top of the form offers three alternative introductory phrases, each preceded by a box for a checkmark. The following introductory phrase is checked: "In consideration of the premium charged, it is understood and agreed that . . . ." The form then lists 19 numbered items, such as "Premium," "Classification" and "Coverage," each with a line for a checkmark, but none of which is checked. Beneath the list of categories is a short list of four alternative courses of action, potentially applicable to any of the items checked above, including "is corrected to read as listed below" and "is amended or changed to read as listed below." Again, each course of action has a line for a checkmark, but none is checked. Typed in bold beneath the courses of action is the phrase: "EXCLUDING ANY AND ALL CLAIMS ARISING FROM ROOFING." At the bottom of the page, there are spaces for a date and initials, both of which are blank.

Lavigne makes two arguments in support of his claim that

-6-

Endorsement A is ambiguous and therefore could not exclude from the coverage of Daigle's policy claims arising from roofing.  First, he argues that the exclusion language in Endorsement A is so "drastically incomplete, ungrammatical and incomprehensible" that no "ordinary person in the shoes of the insured" would conclude after reading it that it excluded roofing coverage.  Second, he claims that because the standard form could be filled out either to add or subtract coverage, and no boxes were checked to indicate a standard addition or subtraction, the language of Endorsement A is ambiguous.  Both of these arguments fail under basic principles of contract interpretation.

1. Ambiguity due to fragmented language

There can be no disagreement that the language of Endorsement A is grammatically defective when read as a whole.  Taken together, the checked and added phrases read: "In consideration of the premium charged, it is understood and agreed that EXCLUDING ANY AND ALL CLAIMS ARISING FROM ROOFING[.]"  As the district court succinctly put it, that language is "not a complete sentence, nor is it a comprehensible fragment of one."

Lavigne's argument that its grammatical defects render Endorsement A ambiguous is, nevertheless, unpersuasive.  As we noted above, a provision in an insurance contract is ambiguous if it is "reasonably susceptible of different interpretations."  First Specialty Ins. Co., 558 F.3d at 100 (internal quotation marks

omitted). Therefore, the relevant question is whether Endorsement A is reasonably susceptible of different interpretations, not whether it forms a grammatically complete sentence. After making the former inquiry, the district court concluded:

> Endorsement A, even in the severely truncated and facially-incomplete form that appears in the Policy, is reasonably susceptible of only one interpretation: that any and all claims arising from roofing are excluded from coverage under the Policy. In interpreting what language is provided by the endorsement, the court need not ignore the fact that it appears in a liability insurance policy. What such a policy would "exclude" is coverage for specified events, injuries or losses.
> To disregard [Endorsement A] entirely, as [Lavigne] advocate[s], would not be to construe the endorsement strictly against the insurer, but rather to render it meaningless, an approach disfavored by the Maine Law Court, even when the contract at issue is one of insurance. See e.g., Pelkey v. General Elec. Capital Assurance Co., 804 A.2d 385, 388 (Me. 2002). An "ordinary person in the shoes of the insured" would understand that the endorsement at issue here excludes coverage for claims arising from roofing.

We agree fully with this thoughtful analysis.

2. Ambiguity due to empty check boxes on Endorsement A

Lavigne argues in the alternative that the absence of check marks on Endorsement A rendered the exclusion language ambiguous. As presented in his brief, his argument is that "there are ways in which the form could be filled out that would not exclude roofing coverage. For example, had Box 17, Additional Insured Endorsement, been checked, the roofing exclusion would have

-8-

been operable against additional insureds, and not against Defendant Daigle."

The logic of this argument is not apparent. In construing the meaning of the language added to Endorsement A, we are not concerned with the boxes on the endorsement that might have been checked. We will not, as Penn-America sensibly argues, "create an ambiguity from the fact that other elections could have been made." Rather, we focus on the "intention of the parties as gathered from the language of the agreement." Greenly, 192 F.3d at 26; see also Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 48 (1st Cir. 2003) ("In construing insurance contracts, courts have no warrant either to convolute the straightforward meaning of policy language or to endow the words with a gloss that is belied by the language itself."). The only language added to Endorsement A plainly expresses the intent of the parties to exclude claims arising from roofing.[5]

## C. Interpretation of "arising from roofing"

Lavigne claims that even if Endorsement A excludes coverage for roofing claims, his injuries did not arise from roofing. Lavigne offers two arguments in support of that claim.

---

[5] Lavigne also points out that Endorsement A is not dated or initialed, and suggests that somehow that lack of initialing and dating contributes to the ambiguity of the endorsement. We do not understand how the lack of a date or an initial on the endorsement contributes in any way to the ambiguity of the language at issue. We also note that Daigle's initials and signature do not appear anywhere on the Penn-America contract.

First, he argues that the term "roofing" is ambiguous and should not be interpreted to include Daigle's "re-roofing" work.  Next, he argues that there is a genuine issue of material fact about whether the accident arose from roofing because Daigle's project involved both roof and non-roof related repairs and because the work being done at the time of the accident involved the faulty scaffolding and not the roof.

### 1. Re-roofing is roofing

Common sense and the dictionary suffice to refute Lavigne's argument that the term "roofing" is ambiguous and might not encompass "re-roofing."  One of the definitions that Lavigne himself proffers for "roofing" is "the act of covering with a roof."  That definition plainly describes the work Daigle's crew was hired to perform, regardless of whether the building previously had a roof.  Furthermore, as Penn-America points out, from a liability standpoint, understanding the plain meaning of the term "roofing" to include "re-roofing" makes sense.  The risks an insurer seeks to avoid by excluding coverage for roofing, such as the risk of bodily injury caused by the equipment involved and the height of the work, and the risk of property damage if the roof is not properly installed, are materially indistinguishable from those associated with re-roofing.

### 2. "Arising from roofing" and causation

Under Maine law, as elsewhere, phrases such as "arising

out of," when used in insurance contracts, do not connote a direct causal nexus.  Rather, such phrases are understood to invoke the concepts of "originating from, growing out of, flowing from, incident to or having connection with."  Murdock v. Dinsmoor, 892 F.2d 7, 8 (1st Cir. 1989) (internal quotation marks omitted) (collecting cases from different jurisdictions); see also Acadia Ins. Co. v. Vermont Mut. Ins. Co., 860 A.2d 390, 393 (Me. 2004) ("[A]n injury arises out of employment when . . . it has its origin, its source, or its cause in the employment."); Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 7 (1st Cir. 2000) (applying Massachusetts law and using the same definition of "arising out of").  The phrase "arising from" is no exception to the general understanding that such contractual terms encompass a broad causal nexus.  See Spirtas Co. v. Fed. Ins. Co., 521 F.3d 833, 836 (8th Cir. 2008) (citing cases) (noting that "in the insurance context courts appear to be unanimous in interpreting the phrase 'arising out of' synonymously with the term 'arising from'"); Vigna v. Allstate Ins. Co., 686 A.2d 598, 599 (Me. 1996) (using "arising out of" and "arising from" interchangeably, without explicitly ruling on the similarity of the phrases).

There is no dispute that Lavigne's injuries originated from, grew out of, flowed from or had a connection with, roofing. As the district court put it:

> There can be no dispute that the primary
> purpose of the [Westbrook] job was roofing,

-11-

and that the scaffolding from which Lavigne fell was set up to be used in roofing the building. That should suffice to make it clear that Lavigne's injuries "arose from roofing."

Again, we agree.

**Affirmed**.