# United States Court of Appeals
## For the First Circuit

No. 10-1522

PEDRO L. RAMOS-ECHEVARRÍA, GLADYS RODRIGUEZ-GALARZA,
CONJUGAL PARTNERSHIP RAMOS-RODRIGUEZ,

Plaintiffs, Appellants,

v.

PICHIS, INC. d/b/a PICHIS HOTEL AND CONVENTION CENTER,
JOHN DOE, RICHARD ROE, INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Dominguez, <u>U.S. District Judge</u>]

Before

Thompson, Selya and Dyk[*]
<u>Circuit Judges</u>.

<u>Juan R. Rodríguez</u>, with whom <u>Rodriquez Lopez Law Offices,
P.S.C.</u> was on brief, for appellants.
<u>Manuel Núñez-Aragunde</u>, with whom <u>Martha L. Martínez Rodríquez</u>
and <u>Manuel A. Núñez Law Offices</u> were on brief, for appellee.

October 21, 2011

---

[*]Of the Federal Circuit, sitting by designation.

**THOMPSON**, **Circuit Judge**. Appellant Pedro Ramos-Echevarría claims that his employer, Pichis Inc. d/b/a Pichis Hotel and Convention Center (Pichis), discriminated against him because of his medical condition - epilepsy - in violation of federal and state statutes including the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. The district judge entered summary judgment in favor of Pichis, and Ramos-Echevarría appealed. Finding no error, we affirm.

## BACKGROUND

As is required when reviewing an order granting summary judgment, we view the facts in the light most favorable to the nonmoving party. See, e.g., Penn-Am. Ins. Co. v. Lavigne, 617 F.3d 82, 84 (1st Cir. 2010).

Ramos-Echevarría suffers from epilepsy. He takes medication to control his condition. On average, he experiences between nine and sixteen focal seizures - which he refers to as "episodes" - each week. During a typical episode, he sees an "aura" before his body begins convulsing for about eight to fifteen seconds; he does not lose consciousness. His cognitive abilities are also impaired during the episode, and sometimes for a short time afterwards.

Ramos-Echevarría has worked for Pichis as a part-time kitchen assistant since 1999, assisting the chef with food preparation. Since 2002, he has held a similar second job at

another restaurant, Palacio Chino. Ramos-Echevarría informed Pichis about his illness at the time he was hired by referencing it on his job application.[1] For the most part, his illness has not affected his job performance.

Between three and six times each year, his episodes are so severe that he has to leave work. But usually when he experiences an episode at work, he simply stops moving until the convulsions are over. He either stabilizes himself or is able to notify his co-workers and they make sure he does not fall. Ramos-Echevarría has never experienced an episode while working on a hot surface. If he is working with a knife when he sees the aura, he drops the knife until the convulsions are over. Once the convulsions stop, he returns to work as soon as he is able.

Within the first week of his employment at Pichis, Ramos-Echevarría experienced an episode. As Ramos-Echevarría tells it, shortly thereafter Luis Emmanuelli, Sr. (Emmanuelli), who owns Pichis, called Ramos-Echevarría into his office at 8:30 one morning and told him that although he was an excellent worker, he could not continue working there "because of [his] condition." Emmanuelli told Ramos-Echevarría that he had to leave the premises. Ramos-Echevarría verbally requested a reasonable accommodation, but he

---

[1] Despite Ramos-Echevarría's disclosure claim, the copy of the job application in the record does not include any reference to his medical condition.

did not present medical documents in making the request.[2] Sticking by his decision to terminate Ramos-Echevarría, Emmanuelli responded, "no, there's no reasonable accommodation for you, or for anybody else."

Ramos-Echevarría walked to the gate outside and then returned to Pichis and asked for a letter stating the reason for his dismissal. Emmanuelli's assistant told him to come back at 11 a.m.

When Ramos-Echevarría returned later that day, he spoke with Luisito Emmanuelli (Luisito), Emmanuelli's son. Luisito told Ramos-Echevarría that Pichis had "reconsidered taking you back, because you're an excellent worker," and that he could continue working for Pichis if he got a statement from his doctor confirming that his medical condition did not prevent him from performing his job duties. Ramos-Echevarría got a medical certificate from his doctor stating that his condition "does not prevent his working; he should not drive a car, climb up to high places without protection, [use] instruments that may be harmful to his health" and provided it to Pichis. Pichis re-hired Ramos-Echevarría, and he has continued to work there as a part-time kitchen assistant ever since producing the medical certificate. Throughout his employment,

---

[2] Ramos-Echevarría later testified that the accommodation he sought was to be moved to a housekeeping or maintenance position, although it is unclear whether he communicated that to Emmanuelli.

-4-

Ramos-Echevarría has continued to suffer from seizures. Pichis has never denied him medical assistance.

Ramos-Echevarría claims that he verbally requested full-time employment from Pichis but did not get it. He also asserts that Luisito told him that he would never be authorized to work full-time because of his epilepsy. He further contends that while he has been working for Pichis, other people - who were hired after him - were given additional hours or increased to full-time positions. Pichis counters that it did not increase Ramos-Echevarría's hours because business was slow.

### How We Got to This Point

Ramos-Echevarría filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that Pichis discriminated against him because of his medical condition. On August 23, 2006, the EEOC issued Ramos-Echevarría a Notice of Right to Sue under 29 C.F.R. § 1601.28.

In 2006, Ramos-Echevarría sued Pichis[3] in the District of Puerto Rico, alleging violations of Puerto Rico law and federal law

---

[3]    Ramos-Echevarría also sued "John Doe" and "Richard Roe," whom he identified as "those persons who are in any way responsible for the events that gave rise to this claim," and "insurance companies of all the defendants." Ramos-Echevarría did not serve the complaint on any other defendant or move to substitute actual defendants for the fictional parties, so the case proceeded with Pichis as the sole defendant.

including the ADA,[4] Title VII,[5] and 42 U.S.C. § 1983.[6]  Ramos-Echevarría's primary contention was that during his tenure, he was not promoted or offered a full-time position, while other employees hired after him were promoted to full-time.  He also complained of several more minor actions that he argues were discriminatory - that he never received a performance evaluation; that he worked through meal breaks for which he was not paid; that he was excluded from an employee meeting; that he once received a written warning for beginning his shift half-an-hour early; and that Pichis created a hostile work environment.

Pichis moved for summary judgment.  A magistrate judge issued a report and recommendation proposing that the district court (1) grant summary judgment in favor of Pichis on Ramos-Echevarría's claims under the ADA; (2) dismiss Ramos-Echevarría's Title VII and section 1983 claims for failure to state claims because those statutes do not encompass claims based on

---

[4]  The ADA prohibits employers from discriminating against qualified individuals on the basis of disability in regard to the terms, conditions and privileges of employment.  42 U.S.C. § 12112 (a) (1990).

[5]  Title VII prohibits employers from discriminating against individuals "because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a).

[6]  Section 1983 provides a cause of action against those who, acting under color of state law, violate federal law.  42 U.S.C. § 1983; see also Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997).

disability;[7] and (3) dismiss without prejudice his claims arising under Puerto Rico law. Over Ramos-Echevarría's objections, the district court adopted the report and recommendation *in toto*. This appeal followed.

## ANALYSIS

### Disability Claim

We review the district court's order granting summary judgment *de novo*. Penn-Am. Ins. Co., 617 F.3d at 84. We affirm if the record, viewed in the light most favorable to the nonmoving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id. A party alleging discrimination may not rest on allegations made in the pleadings, but instead must point to specific evidence supporting his claim. See Soto-Ocasio v. Fed. Express Corp., 150 F.3d 14, 18 (1st Cir. 1998).

The ADA was enacted for "the elimination or reduction of physical and social structures that impede people with some present, past, or perceived impairments from contributing, according to their talents, to our Nation's social, economic and civil life . . . ." Tennessee v. Lane, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring). It prohibits an employer from discriminating against a qualified person with a disability in regard to "job application procedures, the hiring, advancement, or

---

[7] Ramos-Echevarría does not pursue these claims on appeal.

-7-

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment" because of his or her disability or perceived disability. 42 U.S.C. § 12112(a) (1990).

To prevail on a disability discrimination claim, a plaintiff must show by a preponderance of the evidence that he (1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or part on his disability. See Soto-Ocasio, 150 F.3d at 18; Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996). He may prove his case by presenting direct evidence of discrimination or he may prove it indirectly "by using the *prima facie* case and burden shifting methods that originated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 . . . (1973)." Jacques, 96 F.3d at 511 (quoting Katz v. City Metal Co., 87 F.3d 26, 30 n.2 (1st Cir. 1996)) (internal quotation marks omitted). The McDonnell Douglas analysis requires the plaintiff to offer evidence sufficient to establish that he "(i) has a disability within the meaning of the [ADA]; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the [ADA]; (iv) was replaced by a non-disabled person or was treated less favorably

-8-

than non-disabled employees; and (v) suffered damages as a result." Id. If he establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 99 (1st Cir. 2007); see also McDonnell Douglas Corp., 411 U.S. at 802. If the employer offers a non-discriminatory reason, the burden then shifts back to the plaintiff to show that the employer's justification is mere pretext cloaking discriminatory animus. Freadman, 484 F.3d at 99. Our review of the record indicates that Ramos-Echevarría's case stumbles at the very first step – making out a *prima facie* case showing that he has a disability as that term is used in the ADA.

Under the ADA, a disability is a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102(2)(A) (1990). Disability may also be established by having a record of such an impairment or being regarded as having such an impairment. 42 U.S.C. §§ 12102(2)(B), (C) (1990); see also Santiago Clemente v. Exec. Airlines, Inc., 213 F.3d 25, 30 (1st Cir. 2000). Ramos-Echevarría contends that he actually has an impairment and that he also has a record of such an impairment. He does not argue that Pichis regarded him as having such an impairment.

We apply a three-part analysis to determine whether an impairment qualifies as a disability under the ADA. See Bragdon v.

Abbott, 524 U.S. 624, 631 (1998); Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002). First, the plaintiff must establish that he suffers from a physical or mental impairment.[8] Carroll, 294 F.3d at 238. Second, he must demonstrate that it affects life activities that are "major," i.e., "of central importance to daily life." Id. Major life activities are basic activities of daily life that an average person in the general population can perform with little or no difficulty – "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1991). Finally, he must show that the impairment "substantially limits" the identified major life activity. Carroll, 294 F.3d at 238 (citing Lebrón-Torres v. Whitehall Labs., 251 F.3d 236, 239-40 (1st Cir. 2001)).

In assessing whether someone is disabled under the ADA, we must consider the impairment's effect on the particular individual. Katz, 87 F.3d at 32. The limitation caused by the impairment must be permanent or long-term. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002); see also 29 C.F.R.

---

[8] The EEOC defines an impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or any mental or physiological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h) (1991).

§§ 1630.2(j)(2)(ii), (iii) (1991). Evidence of a medical diagnosis of impairment, standing alone, is insufficient to prove a disability. See Toyota Motor Mfg., Ky., Inc., 534 U.S. at 198. What is required is evidence showing that the impairment limits this particular plaintiff to a substantial extent. See Carroll, 294 F.3d at 238 (quoting Toyota Motor Mfg., Ky., Inc., 534 U.S. at 691-92) (internal quotation marks omitted).

### Step 1: Whether There is an Impairment

The parties concede that Ramos-Echevarría suffers from an impairment - epilepsy - so we proceed to examine the second and third factors in the disability analysis.

### Step 2: Whether The Impairment Affects a Major Life Activity

Establishing disability under the ADA is an individualized inquiry. See Carroll, 294 F.3d at 238. To prevail, a plaintiff must show that his impairment affects a major life activity. Id. Courts have required the plaintiff to specify the major life activity in which he claims to be substantially limited. See, e.g., Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1216 (10th Cir. 2007); Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship, 209 F.3d 678, 683 (7th Cir. 2000).

Ramos-Echevarría argues that his impairment – epilepsy – affects a major life activity – his ability to work. He contends that he cannot perform this major life activity or that he is substantially limited in performing it, as compared to the average

-11-

person in the general population.  Working can be considered a major life activity.  29 C.F.R. § 1630.2(i) (1991).  Yet, other than showing that he has to stop working temporarily when he has an episode, Ramos-Echevarría has introduced no evidence showing any particular way in which his illness affects his ability to work. Although his medical certificate indicates that he cannot perform certain activities (driving, climbing without protection, and using certain instruments), he is not required to engage in any of those tasks in the course of his work as a kitchen assistant.

Ramos-Echevarría also failed to introduce evidence that his impairment affects a major life activity outside of the workplace.  He testified that he engages in a typical daily routine.  For example, he discussed playing at the park with children, completing regular household chores, and even remodeling his house (with the exception that he was unable to climb up to put a parapet on the house).  Similarly, Ramos-Echevarría's medical certificate does not show that his epilepsy affects any major life activities.  Other jurisdictions have held that on their own, driving a car and climbing heights are not major life activities. See, e.g., Kellogg v. Energy Safety Servs. Inc., 544 F.3d 1121, 1126 (10th Cir. 2008) (driving is not a major life activity under the ADA); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 n.2 (5th Cir. 1996) ("Climbing is not such a basic, necessary

function . . . [as] to qualify as a major life activity under the ADA.").

With this in mind, we proceed to the third step in the disability analysis - whether Ramos-Echevarría's epilepsy substantially limits his ability to work.

**Step 3: Whether the Impairment "Substantially Limits"
the Identified Major Life Activity**

To satisfy the third element in a disability analysis under the ADA, a plaintiff must "prove a disability by offering evidence that the extent of the limitation in terms of [his] own experience . . . is substantial." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999).

The EEOC defines "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity."[9] 29 C.F.R. § 1630.2(j)(1)(ii) (1991). As applied to working, the EEOC

_____

[9] Although Congress amended the ADA in 2008 to include a more liberal standard for "disability," ADA Amendments Act of 2008, Pub. L. No. 110-325, § 3, 122 Stat. 3553-55 (2008), those amendments became effective on January 1, 2009 and do not apply retroactively. Thornton v. United Parcel Serv., 587 F.3d 27, 34 n.3 (1st Cir. 2009). The events in this case occurred before January 1, 2009, so we apply the more restrictive standard in effect at that time.

defines "substantially limits" as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation . . . ." 29 C.F.R. § 1630.2(j)(3)(i) (1991); Toyota Motor Mfg., Ky., Inc., 534 U.S. at 200 (citing Sutton v. United Airlines, Inc., 527 U.S. 471, 492 (1999)).

In evaluating a plaintiff's claim, we must consider available corrective or mitigative measures. "To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity." Sutton, 527 U.S. at 482. Accordingly, we must assess whether Ramos-Echevarría is substantially limited under the ADA while he is taking medication to control his epilepsy.

Ramos-Echevarría himself provides perhaps the key evidence showing that his epilepsy does not substantially limit his ability to work. Although he testified in his deposition that a couple of times each year he experiences such severe seizures that he has to leave work, when asked, he testified that his medical condition does not significantly affect his work: "No, it doesn't limit me, but rather . . . I stop for a moment and go back to the activity I was . . . engaged in, again." He further testified that

-14-

he has never applied for Social Security benefits "[b]ecause I feel capable to work.  If the time ever comes when I feel disabled, and truly am unable to work, then I'll apply."

In addition to Ramos-Echevarría's testimony, other evidence shows that he is not substantially limited in his ability to work.  The medical certificate that Ramos-Echevarría gave to Pichis states that his epilepsy does not impede him from working.  Even though it also says that he should not use certain instruments, Ramos-Echevarría admits that he routinely works with knives and ovens in the workplace and has not experienced any problems.  Moreover, Emmanuelli and Luisito told Ramos-Echevarría that he was an "excellent worker."  Furthermore, since 2002, he has held a second job at another restaurant, Palacio Chino.

Ramos-Echevarría, nevertheless, attempts to show that his epilepsy substantially limits him from working in a substantial class or broad range of jobs.  He cites statistics showing that a diagnosis of epilepsy is relatively rare and that the Center for Disease Control and Prevention of the United States Department of Health and Human Services characterizes epilepsy as a "chronic disease."  He notes that he requires medication, that he sometimes requires medical treatment and hospitalization for his seizures, and that he cannot drive, climb ladders, or handle certain tools.  From this, he contends that he is substantially limited in performing a broad class of jobs compared to the average person in

the general population.  See Carroll, 294 F.3d at 239 (considering whether plaintiff can show he is significantly restricted in his ability to perform "a class of jobs" or a "broad range of jobs in various classes") (internal quotation marks omitted).

Although Ramos-Echevarría's epilepsy clearly affects his life, the evidence in the record falls short of showing that it substantially limits him from working in any broad class of jobs or any broad range of jobs in various classes.  See id. at 240.  The record contains no expert vocational testimony or labor market statistics supporting Ramos-Echevarría's contention that his epilepsy substantially limits him from performing jobs other than his own.  See id.  "[A] conclusory allegation without evidentiary support" is insufficient to carry Ramos-Echevarría's burden of establishing a *prima facie* case.  See id.

The evidence in the record, including Ramos-Echevarría's own statements, plainly reveals that he is not substantially limited - as that term is defined in the ADA - in his ability to work or in other major daily life activities.

**Record of Impairment**

Relying upon an alternative point of entry in the ADA, Ramos-Echevarría claims that he has a record of a substantially limiting impairment.  42 U.S.C. § 12102(2)(B) (1990).  The EEOC defines an individual with a record of such an impairment as someone who has "a history of, or has been misclassified as having,

-16-

a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (1991). The "record" provision in the ADA protects "those who have recovered or are recovering from substantially limiting impairments from discrimination based on their medical history." Román-Oliveras v. P.R. Elec. Power Auth., No. 09-1503, 2011 WL 3621548, at *4 (1st Cir. Aug. 18, 2011) (citing Bailey v. Georgia-Pac. Corp., 306 F.3d 1162, 1169 (1st Cir. 2002)).

Ramos-Echevarría points to his medical records showing that he has received medical treatment for his seizures in support of his argument that he has a "record of impairment." However, these records (many pages of which are illegible or written only in Spanish, and all of which appear to be irrelevant, given that Ramos-Echevarría's diagnosis and medications are not disputed) do not suggest that his epilepsy has ever substantially limited him in working or in performing any other major life activities. Thus, although Ramos-Echevarría has a record of having epilepsy, he does not have a record of an impairment that substantially limits his ability to perform a major life activity. Therefore, he is not entitled to relief under the "record of impairment" prong of the ADA. See Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1132 (10th Cir. 2003) (employee who had been completely unable to work for a short time did not qualify for relief based on a "record of impairment"); Rakity v. Dillon Cos., 302 F.3d 1152, 1159 (10th Cir.

-17-

2002) (supermarket employee with substantial limitations in his ability to perform manual tasks including lifting and reaching did not qualify for relief based on a "record of impairment").

Because Ramos-Echevarría failed to establish that he falls within the ADA's provisions, we need not address whether Pichis discriminated against him because of an impairment or record of impairment. Similarly, we do not need to consider Pichis' alternative argument that Ramos-Echevarría's claims are time-barred.

## Supplemental Jurisdiction

In addition to his federal claims, Ramos-Echevarría asserts state-law claims against Pichis. After concluding that there was no triable federal cause of action, the district court chose not to exercise supplemental jurisdiction and dismissed without prejudice the claims based on Puerto Rico law.

We review a district court's unwillingness to exercise supplemental jurisdiction for abuse of discretion. Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991). The district court has considerable authority whether to exercise this power, considering factors such as judicial economy, convenience, fairness to litigants, and comity. Id.

When a plaintiff's anchor claim is a federal cause of action and the court unfavorably disposes of the plaintiff's

federal claim at the early stages of a suit, well before trial, the court generally dismisses any supplemental state-law claims without prejudice. Rodriquez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); see also Martinez v. Colon, 54 F.3d 980, 990 (1st Cir. 1995) (affirming dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed"). We affirm the basis of the district court order granting summary judgment on Ramos-Echevarría's federal claim and conclude that the district court did not abuse its discretion in dismissing Ramos-Echevarría's state-law claims without prejudice.

## CONCLUSION

Based on a record that reveals no material factual dispute as to whether Ramos-Echevarría is disabled within the meaning of the ADA, the district court properly granted summary judgment in favor of Pichis on his ADA claim. After disposing of this claim, the district court acted within its discretion in dismissing without prejudice his state-law claims. Accordingly, we **affirm** the district court judgment.