# United States Court of Appeals
## For the First Circuit

No. 15-2553

EDWARD F. GRODEN, FUND MANAGER OF THE NEW ENGLAND TEAMSTERS AND
TRUCKING INDUSTRY PENSION FUND,

Plaintiff, Appellant,

v.

N&D TRANSPORTATION COMPANY, INC.; LAURENT J. DUHAMEL;
ELIZABETH A. DUHAMEL; JED REALTY ASSOCIATES, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Rya W. Zobel, U.S. District Judge]

Before
Torruella, Lipez, and Barron,
Circuit Judges.

Melissa A. Brennan, with whom Catherine M. Campbell and
Feinberg, Campbell & Zack, PC were on brief, for appellant.
Oleg Nikolyszyn for appellees Laurent J. Duhamel and
Elizabeth A. Duhamel.
Robert A. Mitson, with whom Mitson Law Associates was on
brief, for all appellees.

August 2, 2017

**LIPEZ, Circuit Judge**.   In this appeal, we consider whether the Supreme Court's decision in Peacock v. Thomas, 516 U.S. 349 (1996), requires dismissal of a pension fund's lawsuit against an employer's alleged alter egos.   Specifically, we must decide whether there is federal subject matter jurisdiction for the fund's suit seeking $1.2 million in unpaid withdrawal liability that previously was assessed against the employer in a default judgment.   The pension fund's manager, appellant Edward F. Groden, maintains that subject matter jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"). Concluding otherwise, the district court dismissed the case and subsequently denied appellant's motion for post-judgment relief. Having carefully reviewed the law and the fund's allegations, we vacate the court's post-judgment ruling and remand the case for further proceedings.

**I.**

## A. Background

In September 2012, the New England Teamsters and Trucking Industry Pension Fund ("the Fund") secured a default judgment in federal court against D&N Transportation, Inc. ("D&N") for unpaid withdrawal liability the company owed, pursuant to ERISA as amended by the Multiemployer Pension Plan Amendments Act

("MPPAA"), when it ceased operations.[1]  See 29 U.S.C. §§ 1132(e);

1381; 1451.[2]  Defendants Laurent and Elizabeth Duhamel ("the

Duhamels"), who are husband and wife, were D&N's sole stockholders

during the company's forty-odd years in business.  Eighteen months

after the default judgment, with no payments having been made, the

Fund filed a new complaint -- i.e., this action -- against the

Duhamels, N&D Transportation, Inc. ("N&D"), and JED Realty

Associates, LLC ("JED Realty"), seeking to hold them liable for

the withdrawal liability.

---

[1] The action was filed on behalf of the Fund by its then manager, Charles Langone, who was later succeeded in that position by Edward F. Groden.  In September 2016, we granted Langone's assented-to motion to substitute Groden as plaintiff-appellant in this appeal.  For convenience, we refer to appellant as "the Fund."

[2] We borrow the Ninth Circuit's explanation of withdrawal liability:

> ERISA, which was enacted in 1974, was intended to protect employees covered by pension plans from being deprived of anticipated benefits because of employer underfunding.  When it turned out to do so inadequately, MPPAA was enacted in 1980 to reduce an employer's incentive to terminate its affiliation with a multiemployer pension plan by requiring employers who do withdraw to pay the unfunded vested benefits attributable to the withdrawing employers' participation.

Resilient Floor Covering Pension Fund v. M&M Installation, Inc., 630 F.3d 848, 851 (9th Cir. 2010); see also Sun Capital Partners III, LP v. New Eng. Teamsters & Trucking Indus. Pension Fund, 724 F.3d 129, 138 (1st Cir. 2013).

The Fund claimed, inter alia, that the Duhamels and N&D, a corporation owned by their two children (Nancy Belsito and David Duhamel), are alter egos of D&N and, accordingly, are equally responsible for the unpaid ERISA obligation. The Fund also alleged that JED Realty, another business owned by David Duhamel, is an alter ego of N&D and, as such, is likewise responsible for the D&N debt. In support of its alter ego contentions, the Fund asserted, inter alia, that the operations of D&N and N&D overlapped in significant respects, including use of the same office space and telephone number, joint insurance coverage, linked bank accounts, and shared employees.[3] Put simply, the Fund alleges that D&N and N&D were, in practical effect, the same entity, with "common ownership, management, business purpose, customers, employees and operation." In addition, the Fund claims that the Duhamels as individuals took "functional[] control" of D&N's assets when they sold the company's building to JED Realty and assigned the mortgage on the property to themselves personally. Langone v. N&D Transp. Co. ("Langone I"), No. 1:14-cv-11028-RWZ, Mem. Dec. at 2 (D. Mass. Aug. 27, 2015). The Fund's first amended complaint includes two

---

[3] Certain of these overlaps were alleged in the complaint, while others were asserted in the Fund's Opposition to the Motions to Dismiss. See Docket No. 52, Opposition to Motion, July 6, 2015, at 10-11. When considering motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may consider materials outside the pleadings. See González v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

- 4 -

counts stemming from this transaction, one alleging a fraudulent transfer and the other seeking to reach and apply the funds owed by JED Realty to the Duhamels.

The defendants moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Citing the Supreme Court's decision in Peacock, which we describe below, defendants argued that suits premised on an alter ego theory or based on piercing a corporate veil do not present a federal question. They also invoked Futura Development of Puerto Rico, Inc. v. Estado Libre Asociado De Puerto Rico, 144 F.3d 7 (1st Cir. 1998), in which this court rejected an alter ego claim as a basis for ancillary federal jurisdiction. Defendants asserted that the Fund's complaint does not specify any ERISA provision authorizing the Fund to enforce the judgment rendered in the earlier action against third parties. Hence, defendants contended, the complaint should be dismissed for lack of federal subject matter jurisdiction and because it failed to state a claim for which relief could be granted. Defendants also challenged the fraudulent transfer claim on multiple additional grounds, including that it was untimely.

**B. The District Court's First Ruling**

The district court initially granted the defendants' motion to dismiss based on the factual inadequacy of the complaint. Langone I, at 8-9. Although the court noted differences among the circuits as to when federal subject matter jurisdiction exists for

- 5 -

"a follow-on suit to collect an ERISA judgment from an alleged alter ego of a judgment-debtor," id. at 7, the court sidestepped that legal issue because it found the Fund's allegations insufficient to support an inference that any defendant was D&N's alter ego at the time D&N violated ERISA, id. at 8-9.[4] The court thus dismissed the alter ego counts (Counts I, II, and V) for failure to state a claim, and it declined to exercise supplemental jurisdiction over the state law fraudulent-transfer and reach-and-apply claims (Counts III and IV).[5]

The Fund responded by filing a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6) or, alternatively, to amend the judgment under Rule 59(e). The Fund argued, inter alia, that the district court had misconstrued ERISA case law and that, under the correct analysis, the Fund could "easily remed[y]" its failure to allege the pertinent timing through an amendment to its complaint. The court committed legal error, according to the Fund, by holding that a valid ERISA claim

_____

[4] Among other points, the court noted that the complaint "d[id] not allege that N&D had or breached any duties under an ERISA plan, nor does it allege that N&D was a fiduciary of an ERISA plan." Langone I, at 8.

[5] The court also denied the Fund's motion to file a second amended complaint to add defendants on the ground that it would be futile "to assert the same legally flawed claims that are in the current operative complaint against additional defendants." Langone I, at 11.

requires a showing that the defendants were plan fiduciaries.  The Fund also pointed to the court's incorrect statement that its first amended complaint did not allege that N&D is an "employer" within the meaning of ERISA.  See 29 U.S.C. §§ 1002(5), 1301(b), 142(1), 152(2), (6), (7).  The Fund did not object, however, to dismissal of the alter ego claim against the Duhamels personally (Count II).[6]

## C. The District Court's Second Ruling

The district court denied the Fund's post-judgment motion, finding no basis for setting aside the judgment under Rule 60(b)[7] or modifying the decision under Rule 59(e)[8].  Langone v. N&D Transp. Co. ("Langone II"), No. 1:14-cv-11028-RWZ, Mem. Dec. at 7 (D. Mass. Nov. 18, 2015).  With respect to the former, the court refuted the Fund's assertion that the decision should be vacated because the court had committed legal error in holding that ERISA

---

[6] The Fund also reiterated its request to add defendants in a second amended complaint that it said would include the missing temporal allegation.

[7] Under Rule 60(b), "[t]he court may relieve a party . . . from a final judgment, order, or proceeding" for various reasons, including mistake, newly discovered evidence, fraud, or "any other reason that justifies relief."  Fed. R. Civ. P. 60(b), 60(b)(6).  Under the "catchall category," subdivision (b)(6), relief is available "only in 'extraordinary circumstances.'"  Buck v. Davis, 137 S. Ct. 759, 772 (2017) (quoting Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)).  The district court interpreted the Fund's request as falling within the catchall provision.

[8] Rule 59(e) simply states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

alter ego claims require an allegation of fiduciary status. To the contrary, the court stated, it had merely identified fiduciary status as one alternative prerequisite for an ERISA claim, along with a breach of duty under an ERISA plan or alter ego status at the time the primary actor violated ERISA. The court clarified that it had dismissed the alter ego claims because the Fund had not adequately alleged any of those grounds for ERISA liability. Id. at 5. The court thus found no "extraordinary circumstances" to justify vacating the prior judgment. Id.

The court also refused to alter its judgment so that the Fund could file an amended complaint. Id. at 7. Relying on Peacock and Futura Development, the court ruled that, even with the proposed new timing allegation, the ERISA claims "would not provide a basis for federal jurisdiction." Id. at 6-7.

On appeal, the Fund's primary argument is that the district court erred as a matter of law in finding that its alter ego claims (Counts I and V) would not fall within the federal courts' subject-matter jurisdiction even if the complaint were amended to allege that N&D was the alter ego of D&N at the time the latter withdrew from the Fund and violated ERISA.[9] The Fund also argues that the district court should have granted its motion

---

[9] Consistent with the position taken in its post-judgment filings, the Fund does not challenge on appeal the dismissal of its alter ego claim against the Duhamels personally (Count II).

- 8 -

to amend the complaint to cure the temporal deficiency and erroneously declined to exercise supplemental jurisdiction over its state-law claims against the Duhamels and JED Realty (Counts III and IV). The Fund thus asks this court to vacate the denial of its motion for post-judgment relief.

## II.

### A. Standard of Review

As both parties observe, a district court's ruling on a post-judgment motion under either Rule 59(e) or Rule 60(b) ordinarily is reviewed for abuse of discretion. See Guadalupe-Báez v. Pesquera, 819 F.3d 509, 518 & n.4 (1st Cir. 2016) (Rule 59(e)); Giroux v. Fed. Nat'l Mortg. Ass'n, 810 F.3d 103, 106 (1st Cir. 2016) (Rule 60(b)). Here, however, the Fund asserts that we should apply de novo review to the district court's denial of post-judgment relief because that decision stemmed from the court's misreading of ERISA law.

We agree that this appeal turns on a question of law -- whether the Fund's alter ego claims give rise to federal subject-matter jurisdiction -- and that we do not defer to the district court if we detect a legal error in its reasoning. See Guadalupe-Báez, 819 F.3d at 518 (Rule 59(e)); Ungar v. Palestine Liberation Org., 599 F.3d 79, 83 (1st Cir. 2010) (Rule 60(b)(6)); see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 134 S. Ct. 1744, 1748 n.2 (2014) ("The abuse-of-discretion standard does not

preclude an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990))).[10]

Accordingly, we turn to our review of the applicable law. We briefly describe our general approach to the alter ego doctrine in the ERISA context before considering the case law discussing whether, and when, a federal action may be brought against an asserted alter ego based on a previously entered judgment against the signatory ERISA employer.

**B. ERISA Alter Ego Status in the First Circuit**

It is well established First Circuit law that the alter ego doctrine applies to ERISA claims. See Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp. ("Belmont"), 139 F.3d 304, 308 (1st Cir. 1998) (noting that alter ego analysis was "developed in the labor law context" and extended "to claims involving employee benefit funds"). We have observed that reliance on the alter ego doctrine in the ERISA context can prevent the

---

[10] The Fund alternatively argues that our review is de novo because the district court's post-judgment ruling was based on a different rationale (failure to present a federal question) than its original judgment dismissing the action for failing to state a claim for relief. Regardless, the question before us is one of law, which triggers plenary review.

evasion of pension obligations, thereby protecting employee benefits and denying employers "an unearned advantage in [their] labor activities." Id. at 308 (quoting Chicago Dist. Council of Carpenters Pension Fund v. P.M.Q.T., Inc., 169 F.R.D. 336, 342 (N.D. Ill. 1996)); see also id. ("[U]nderlying congressional policy behind ERISA clearly favors the disregard of the corporate entity in cases where employees are denied their pension benefits." (quoting P.M.Q.T., Inc., 169 F.R.D. at 342)). Although the doctrine is used primarily in circumstances "involving successor companies, 'where the successor is merely a disguised continuance of the old employer,' it also applies to situations where the companies are parallel companies." Id. at 307 (quoting C.E.K. Indus. Mech. Contractors, Inc. v. NLRB, 921 F.2d 350, 354 (1st Cir. 1990)) (citations omitted); see also Union Builders, Inc. v. NLRB, 68 F.3d 520, 524 (1st Cir. 1995).[11]

Among the relevant factors in determining whether a second company is an alter ego of a signatory ERISA employer are "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment,

_____

[11] The defendants do not contest the Fund's assertion that our ERISA alter ego precedent is applicable to the non-payment of withdrawal liability as well as to the obligation to contribute to a pension fund. See 29 U.S.C. § 1451(b) (stating that, "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution").

- 11 -

customers, supervision, and anti-union animus -- i.e., 'whether the alleged alter ego entity was created and maintained in order to avoid labor obligations.'"  Belmont, 139 F.3d at 308 (quoting NLRB v. Hosp. San Rafael, Inc., 42 F.3d 45, 50 (1st Cir. 1994)). "No single factor is controlling, and all need not be present to support a finding of alter ego status."  Id.

It is thus uncontroverted in our circuit that a plaintiff may seek to impose ERISA liability on an alter ego of the employer that formally bears the obligations imposed by the statute.  The dispute here concerns the Fund's attempt to do so in a new action brought subsequent to a judgment against the signatory employer. Such secondary litigation -- described by the district court as a "follow-on suit" -- is the focus of the Supreme Court's decision in Peacock and our analysis in Futura Development.  We thus next review that governing precedent.

## C. "Follow-on" Jurisdiction: Peacock and Futura Development

In Peacock v. Thomas, plaintiff Thomas sued an officer of his former employer in an attempt to collect a monetary judgment obtained against the employer in an earlier ERISA action.  516 U.S. at 351-52.  The defendant, Peacock, had been found not liable in the original action, and the second suit was premised on Peacock's allegedly improper disposal of the company's assets, after the judgment, to prevent satisfaction of that judgment.  Id. at 352.  In the original litigation, Thomas had sued for benefits

- 12 -

due under the corporation's pension plan.  Id. at 351.  In the second action, Thomas claimed that Peacock had participated in a conspiracy to siphon assets from the company and fraudulently transferred company assets in violation of state laws.  Id.

The Supreme Court held that the federal courts lacked subject matter jurisdiction over the second lawsuit.  The Court first rejected Thomas' reliance on ERISA as the source of federal jurisdiction, observing that "[w]e are not aware of, and [plaintiff] does not point to, any provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party."  Id. at 353.  Although Thomas suggested that his subsequent suit arose under the ERISA provision authorizing civil actions for "appropriate equitable relief," 29 U.S.C. § 1132(a)(3), the Court pointed out that Thomas had "alleged no violation of ERISA or of the plan."  Id.  The Court further held that Thomas' claim based on piercing the corporate veil "does not state a cause of action under ERISA and cannot independently support federal jurisdiction."  Id. at 353-54.  Indeed, as the Court noted, the challenged conduct in Peacock occurred years after the ERISA plan was terminated and "did not occur with respect to the administration or operation of the plan."  Id. at 353 (quoting Respondent's Br. at 11).  Original jurisdiction based on the federal statute was thus unavailable.

- 13 -

The Court, however, did not entirely foreclose the possibility of federal jurisdiction for a veil-piercing claim brought in a lawsuit filed subsequent to an earlier ERISA judgment. In dicta, the Court contemplated such a claim where the complaint in the second litigation alleges an ERISA violation:

> Even if ERISA permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise subject to suit under ERISA, Thomas could invoke the jurisdiction of the federal courts only by independently alleging a violation of an ERISA provision or term of the plan. Piercing the corporate veil is not itself an independent ERISA cause of action, "but rather is a means of imposing liability on an underlying cause of action."

516 U.S. at 354 (footnote omitted) (quoting 1 C. Keating & G. O'Gradney, Fletcher Cyclopedia of Law of Private Corporations § 41, at 603 (perm. ed. 1990)).

The Court in Peacock also considered, and rejected, Thomas' contention that his suit fell within the federal courts' ancillary jurisdiction. The Court explained that the federal courts' power to dispose of supplemental claims that have "a factual and logical dependence" on the "primary" federal claims does not provide a basis for subject-matter jurisdiction when non-federal claims are brought on their own in a separate proceeding. See id. at 355 ("The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims."). Nor did Thomas' suit fit within the courts' limited

- 14 -

ancillary enforcement jurisdiction, in which "a federal court's inherent power to enforce its judgments" warrants action against third parties to protect -- and collect -- a judgment already imposed." Id. at 356. In such cases, the judgment creditor is "not seek[ing] to impose liability for a money judgment on a person not otherwise liable for the judgment," id. at 351, but is attempting to secure the judgment debtor's funds via mechanisms designed for that purpose, "including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances," id. at 356.

In Futura Development, 144 F.3d at 8, a panel of this court relied on Peacock, in a non-ERISA case, to conclude that the district court lacked jurisdiction over a follow-on lawsuit premised on an alter ego theory. The plaintiff company, Futura, was seeking payment from the Commonwealth of Puerto Rico on a $12 million judgment previously issued against a public corporation, the Cooperative Development Company ("CDC"), in an action originally brought under federal diversity jurisdiction. See id. at 10. Acknowledging that neither federal question nor diversity jurisdiction applied to the claim against the Commonwealth, id., Futura argued that its new action was properly in federal court under ancillary enforcement jurisdiction. It asserted that, unlike the corporate officer sued in Peacock, the Commonwealth was "not really a 'new' defendant" because it was the alter ego of the

- 15 -

CDC, and it was thus liable for the primary judgment "from the moment that the jury returned its verdict in the original proceeding."  Id. at 11.  We rejected Futura's reasoning, concluding that its second action was equivalent to the veil-piercing claim in Peacock because it involved "an independent theory of liability under equity, complete with new evidence." Id. at 12.  Under Peacock, such a new proceeding requires its own basis for federal jurisdiction.[12]  Id. at 10-12.

## III.

The question before us is whether the district court properly concluded that it lacked subject-matter jurisdiction over this action under the principles articulated in Peacock. Initially, the court dismissed the Fund's complaint under Rule 12(b)(6) because it found the allegations insufficient to establish the defendants' alter ego status.  When the Fund sought in its post-judgment motion to amend the complaint to specify that

---

[12] Futura subsequently tried to bring its alter ego claim as a supplementary proceeding in the original action.  See U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 492 (1st Cir. 2000).  We again found no federal enforcement jurisdiction over the claim.  Id. at 492-93 (holding that federal enforcement jurisdiction does not allow "proceedings to establish direct liability against the Commonwealth on an alter ego theory . . . where the limitations on diversity jurisdiction would have prevented the Commonwealth from being named a defendant in the action originally").  We declined to address the separate, "complex question" of whether the case also could be dismissed based on the Commonwealth's Eleventh Amendment immunity.  See id. at 495.

- 16 -

N&D was D&N's alter ego at the times pertinent to the disputed withdrawal liability,[13] the court concluded that the proposed amendment would be futile.  It reasoned that, even so revised, the complaint would lack "allegations that the defendants exercised control over D&N's business and/or played a part in D&N's ERISA violation."  Langone II, at 7 n.3.  Absent such allegations, the court stated,

> [t]his matter is . . . not appreciably different from a veil piercing situation such as that analyzed in Peacock, 516 U.S. 349.  It is thus functionally an action against a third party to collect on an existing judgment, which is typically a matter for state courts. See id. at 357.

Langone II, at 7 n.3.  The court thus declined to vacate its prior dismissal of the action because of "the subject matter jurisdiction problem."  Id. at 7.

The district court, however, misconstrued the Fund's allegations concerning N&D's alter ego status with the proposed new timing averment.  By claiming that N&D was D&N's alter ego when the withdrawal liability arose, and supporting that claim

---

[13] In referring to the alter ego concept with respect to N&D, we use the term consistently with our prior usage in labor and ERISA cases, i.e., to signify two employer entities that are interchangeable based on the factors identified in Belmont and the earlier cases on which it relied.  See Belmont, 139 F.3d at 308-09; Hosp. San Rafael, 42 F.3d at 50; C.E.K. Indus. Mech. Contractors, 921 F.2d at 354.  We address the alter ego claim against JED Realty separately below.

with factual allegations of substantial overlap in the companies' operations, the Fund would be asserting that D&N and N&D were interchangeable and that, accordingly, N&D necessarily "played a part in D&N's ERISA violation." See supra note 13. The court's fundamental error in evaluating the alter ego allegations concerning N&D thus led it astray in assessing whether the Fund had established federal subject-matter jurisdiction.

Properly viewed, this case is readily distinguishable from Peacock and Futura Development. Under Peacock, a second litigation seeking to collect on an earlier judgment must have its own basis for federal subject-matter jurisdiction. Here, the Fund maintains that N&D was -- at the pertinent times -- the same company as D&N and, as such, bore the same obligation under ERISA for the payment of that liability. As the district court acknowledged, see Langone II, at 7 n.4, the Fund alleged that "N&D Transportation is an 'employer' within the meaning of ERISA," Compl., Docket #31-1, ¶ 6 (citing 29 U.S.C. §§ 1002(5), 1301(b)(1)), and "an employer in an industry affecting commerce within the meaning of ERISA," id. (citing 29 U.S.C. §§ 142(1), 152(2), (6)). In addition, as noted above, the complaint alleged facts addressing the Belmont factors before asserting that N&D was the alter ego of D&N and that, as D&N's alter ego, N&D was "liable for the judgment issued against D&N" in the prior action. Id. ¶¶ 24-25.

- 18 -

The Fund's claim against N&D was thus anchored in ERISA and premised on N&D's de facto status as an ERISA employer, and not -- as was the situation in Peacock -- on alleged wrongful conduct outside the scope of the federal statute. Indeed, this case presents the scenario the Supreme Court itself distinguished from the circumstances presented in Peacock, i.e., one in which a plaintiff "could invoke the jurisdiction of the federal courts . . . by independently alleging a violation of an ERISA provision or term of the plan." 516 U.S. at 354. Likewise, because ERISA provides the jurisdictional hook, allowing the claim against N&D to proceed is also consistent with Futura Development.[14]

The same cannot be said, however, for the alter ego claim against JED Realty (Count V), which alleges that JED Realty is responsible for the prior judgment as an alter ego of N&D -- but

_____

[14] We further note that our conclusion on the alter ego claim against N&D accords with both Court of Appeals decisions highlighted by the district court. In Ellis v. All Steel Construction, Inc., 389 F.3d 1031 (10th Cir. 2004), the Tenth Circuit held that subject-matter jurisdiction under ERISA exists for a follow-on suit only if the plaintiff asserts a direct ERISA violation by the alter-ego defendant. Id. at 1035; see also id. at 1034 (stating that "claims that posit an alter ego's direct concurrent liability for an ERISA violation" "do[] not implicate Peacock concerns"). The Seventh Circuit, meanwhile, has distinguished between alter ego claims and the piercing-the-corporate-veil theory at issue in Peacock, concluding that a pension fund's cause of action against asserted alter egos necessarily arises under federal law because "the same entity" is being sued: "[W]hen the parent and subsidiary are just alter egos, then everything depends on, and the claim arises under, federal law." Board of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031, 1038 (7th Cir. 2000).

- 19 -

does not assert that JED Realty is directly liable as an ERISA employer. See Compl., Docket #31-1, ¶¶ 72-73 (alleging that JED Realty is an alter ego of N&D and, "[a]s an alter ego of N&D Transportation, Defendant JED Realty is liable for any judgment issued against N&D Transportation as the alter ego of D&N Transportation"). Because this claim is based solely on the relationship between N&D and JED Realty, it is akin to the veil-piercing claim asserted in Peacock and the alter ego claim alleged in Futura Development -- i.e., it involves a theory of liability that does not present a federal question, involve diverse parties, or fall within the federal courts' recognized ancillary enforcement jurisdiction. Hence, considered on its own, there is "no independent basis for [federal] jurisdiction" for the alter ego claim against JED Realty. Peacock, 516 U.S. at 355.

Of course, if federal subject-matter jurisdiction exists for the alter ego claim against N&D (Count I), the JED Realty alter ego claim (Count V) -- as well as the state law fraudulent-transfer and reach-and-apply claims (Counts III and IV) -- theoretically could proceed pursuant to the court's supplemental jurisdiction.[15] We offer no view on that path for the Fund's claims, as it is not our role to consider in the first instance the factors informing

---

[15] For the first time on appeal, the Fund asserts that the district court had ancillary enforcement jurisdiction over the fraudulent transfer claim. We decline to address that belated contention here.

- 20 -

the district court's discretionary judgment on whether to entertain supplemental claims. <u>See</u> <u>Ramos-Echevarría</u> v. <u>Pichis, Inc.</u>, 659 F.3d 182, 191 (1st Cir. 2011) (noting court's "considerable authority" to decide whether to exercise supplemental jurisdiction based on factors that include "judicial economy, convenience, fairness to litigants, and comity").

We therefore conclude that the district court erred in refusing to vacate its dismissal of the Fund's alter ego claim against N&D (Count I), and rejecting the proposed amended complaint, on the ground that federal jurisdiction would be lacking even if the complaint contained the temporal allegation concerning N&D's alter ego status. Because the court's post-judgment rulings on the other counts rest on this legal error, the court on remand will need to reconsider its dismissal of those counts as well.

## IV.

For the reasons detailed above, we vacate the district court's denial of the Fund's Motion for Relief from Judgment and/or Motion to Amend the Judgment and remand for further proceedings consistent with this opinion.

<u>So ordered</u>.  <u>Costs to appellant</u>.